RAIMUNDO SIERRA y la SUCESIÓN DE VENANCIA ARROYO, compuesta de RAFAEL y JOSÉ ARROYO, y ANA, EDUVIGIS, ALEJANDRINA, CIRILA, ALIPIO, ELVIRA y MODESTO SIERRA ARROYO, demandantes y apelados, *v.* SALVADOR VIETA PUIG, CRUZ FONTÁNEZ LORENZANO y MANUEL RODRÍGUEZ GARCÍA, demandados y apelante el primero.

Núms. 7870 y 7892.—*Sometidos:* Junio 20, 1939. *Resueltos:* Marzo 6, 1940.

*Francisco González Fagundo* y *Antonio L. López,* abogados del apelante; *Villamil & Santana Becerra,* abogados de los apelados.

EL JUEZ ASOCIADO SEÑOR TRAVIESO emitió la opinión del tribunal.

La demanda en este caso contiene seis causas de acción, por las cuales se reclama el título y la posesión de una finca

y se pide entre otras cosas sentencia contra los demandados por $5,900 en concepto de daños y perjuicios.

En junio 1, 1938, los demandantes solicitaron el embargo del producto líquido que quede en The Eastern Sugar Corporation a favor del demandado Vieta, como producto de las cañas cosechadas y entregadas por éste a la central, no debiendo exceder el embargo de la suma de $1,500. Decretado el embargo mediante prestación de fianza por $1,000 y notificada la orden al demandado, solicitó éste la nulidad de la orden y del diligenciamiento del embargo, entre otros por los dos fundamentos siguientes:

1. Porque la orden decretando el embargo es nula e ineficaz por no haberse cumplido con la sección 14 de la Ley para asegurar la efectividad de las sentencias, de marzo 1, 1902, o sea por no haberse dado traslado al demandado ni celebrado la comparecencia que determina dicha sección.

2. Porque el embargo es nulo, pues no puede ser objeto de embargo un bien que aún no existe. Solamente pueden ser embargados los bienes pertenecientes al demandado en el momento del embargo y no los que puedan resultar de una liquidación de negocios entre dos partes.

Celebrada la vista de dicha moción, la corte la declaró sin lugar, concediendo al demandante un término de cinco días para radicar una nueva fianza. No conforme el demandado, radicó el recurso núm. 7870 en el que señala como errores de la corte inferior la desestimación de los fundamentos en que se basaba la moción sobre nulidad del embargo y de la orden a virtud de la cual se practicó el mismo.

Radicada en 20 de junio de 1938 la nueva fianza y aprobada ésta por el juez, en 27 del mismo mes la impugnó el demandado por los siguientes motivos:

(A) Porque habiéndose decretado el embargo en junio 1, 1938, la fianza debía tener una cláusula que la hiciera retroactiva a dicha fecha.

(B) Porque la fianza está firmada solamente por Raimundo Sierra y no lo está por los otros codemandantes.

(C) Porque la fianza está a favor de todos los demandados y solamente se han embargado bienes del demandado Vieta.

(D) Que las declaraciones de los fiadores son insuficientes, porque después de decir que cada uno tiene bienes por más de $2,000, después de cubiertas todas sus deudas y responsabilidades, no juran que sea con exclusión de toda propiedad exenta de ejecución, porque pudiera ser que en alguno de los bienes descritos en el juramento tuvieran los fiadores constituído su *homestead*.

La corte inferior declaró sin lugar dicha moción y el demandado Vieta apeló. El recurso fué radicado bajo el número 7892.

A petición de las partes ambos recursos fueron vistos y serán resueltos conjuntamente.

¿Erró la corte inferior al decretar el embargo, después de presentada la demanda, sin dar traslado a la parte contraria, con citación para comparecer ante el juez y proponer y practicar las pruebas que fueren pertinentes?

Aparece del récord que la demanda en este caso fué radicada en febrero 14 de 1938, y que la moción sobre aseguramiento de sentencia lo fué en primero de junio del mismo año. No existe en el récord ante nos constancia alguna en cuanto al emplazamiento o comparecencia voluntaria de los demandados con anterioridad a la fecha en que se solicitó y decretó el embargo.

La sección 3 de la Ley para asegurar la efectividad de las sentencias, según fué enmendada por la ley de 13 de abril de 1916, lee así:

"Ningún aseguramiento de sentencia podrá decretarse sin la presentación de la correspondiente demanda y de la solicitud de aseguramiento. La solicitud de aseguramiento podrá presentarse con la demanda o luego de interpuesta, en cualquier período del juicio, antes o después de la sentencia. Si el aseguramiento se solicitare después de pronunciada sentencia no se exigirá fianza."

Como se ve, todo lo que requiere el estatuto es la presentación de una solicitud de embargo y que antes o en el momento de presentarla se radique una demanda. No es nece-

saria la notificación al demandado, ni la práctica de prueba alguna. Si de la faz de la demanda y de las alegaciones de la petición aparecen razones legales suficientes para justificar el embargo, es deber de la corte decretarlo. Si después de practicado el embargo, cualquiera de los litigantes presenta alguna moción con relación a dicho embargo—por ejemplo, para solicitar su modificación o nulidad, para pedir ampliación de fianza o para atacar la suficiencia o solvencia de los fiadores—la parte promovente está obligada por la sección 14 de la misma Ley de Aseguramiento de Sentencias a dar traslado a la parte contraria para que ésta tenga una oportunidad de comparecer ante el tribunal, ser oída e intervenir en la práctica de la prueba.

En el caso de *Madera* v. *Campillo, Juez*, 30 D.P.R. 163, se levantó la misma cuestión que ahora levanta el apelante. Y este tribunal, por voz de su Juez Asociado Sr. Wolf, resolvió:

"Respecto a la cuestión de la citación estamos convencidos de que no fué la idea de la Ley de marzo 1, 1902, exigir que un aseguramiento sea notificado primero al deudor antes de expedirse. Si tal notificación fuera necesaria, el fin principal de la ley, o sea el aseguramiento, podría quedar anulado. En ninguna otra parte que sepamos, requiere un estatuto sobre embargos la notificación previa al deudor, aunque frecuentemente se exige fianza en garantía del deudor. Ambos textos, el inglés y el castellano, en sus términos no se refieren a la expedición del aseguramiento mismo, sino a una controversia que surge de '*allegations*' en inglés y 'pretensiones' en castellano. Nada hay que indique la intención de una notificación primaria. Es cierto que en este caso el aseguramiento no se solicitó junto con la demanda sino que se decretó después de formulada la contestación, pero no existe nada en la ley que exija que el aseguramiento se libre inmediatamente. Por el contrario, la idea de la ley es hacer efectiva la sentencia una vez dictada. No encontramos que haya habido error de procedimiento."

No erró la corte inferior al decretar el embargo sin notificación previa al demandado.

¿Es embargable el producto líquido que quede en poder de una corporación azucarera, resultante de la elaboración de cañas pertenecientes a la parte demandada?

Sostiene el apelante que no lo es, por entender que mientras no se practique la liquidación, el producto líquido que se pretende embargar no puede tener existencia real; y que de acuerdo con los preceptos del Código de Enjuiciamiento Civil sólo pueden ser embargados los bienes pertenecientes al demandado en el momento del embargo.

En los casos de *Diego Agüeros & Co.,* v. *Heres,* 50 D.P.R. 533, y *Rodríguez* v. *Fontes y American R. R. Co., Int.,* 51 D.P.R. 670, se sostuvo que salarios no devengados aún no pueden ser embargados; y en el primero de dichos casos se dijo:

"La teoría de la corte necesariamente debió ser, y lo es, que no existía cosa alguna que pudo haber sido alcanzada por ejecución; que salarios a devengar no constituyen cosas. De ordinario el derecho del deudor a su sueldo no surge hasta que haya prestado sus servicios.

" . . .

"La apelante sostiene que no hay nada en la ley que prohiba el embargo de salarios futuros, y estamos de acuerdo. Sin embargo, como hemos insinuado antes, generalmente una ejecución o embargo sólo procede contra una cosa en existencia."

En *Armour Fertilizer Works* v. *Ramírez,* 52 D.P.R. 537, se planteó la misma cuestión envuelta en el presente caso. El embargo fué anulado por la misma corte que lo decretó, por el fundamento de que la notificación del embargo fué diligenciada por el secretario y no por el márshal, dejando la corte sin resolver los otros dos alegados motivos de nulidad, que eran los mismos que se aducen en el presente recurso. Visto el caso en apelación, interpuesta por el demandante embargante, se revocó la orden recurrida por el motivo de que "el único fundamento en que basó su orden para anular el embargo no existía." Esta corte dejó abierta la cuestión principal, diciendo:

". . .Si el remanente que resulte a favor de un colono al liquidarse un contrato de refacción agrícola y molienda de cañas puede ser objeto de tal secuestro (*garnishment*), es una cuestión importante

que debe ser resuelta en primera instancia por la corte de distrito, luego de debatirse la cuestión adecuadamente. De propia iniciativa y sin la ayuda de los letrados, no resolveremos por ahora la cuestión.''

En el caso de autos, la cuestión fué resuelta en primera instancia en contra del apelante y éste la ha señalado como error cometido por la corte inferior. Es nuestro deber considerarla y resolverla de una vez.

La situación legal que nos presenta el caso de autos es a nuestro juicio distinta a la de los casos en que se ha tratado de embargar salarios futuros o por devengar. El salario que no ha sido aún ganado, no tiene ni puede tener existencia real hasta que se haya realizado el servicio que con él se paga. Si el asalariado falleciese antes de prestar el servicio, sus herederos no tendrían derecho a reclamar nada; y sus acreedores nada podrían embargar.

En el caso que estamos considerando, existe un contrato de refacción y molienda de cañas entre el demandado Vieta y The Eastern Sugar Corporation. De acuerdo con dicho contrato, cuyos términos desconocemos, el demandado sembró cañas en la finca que el demandante reclama como de su propiedad. En la fecha en que se practicó el embargo del remanente que quedase a favor del demandado al hacerse la liquidación del contrato de refacción, ya las cañas habían sido cosechadas y entregadas a la central y se encontraban en el proceso de ser elaboradas y convertidas en azúcar. Las cañas tenían existencia real, y no hay duda alguna de que ellas hubiesen podido ser embargadas mientras estaban en poder del demandado Vieta, con sujeción desde luego al derecho preferente que, a virtud de la ley que regula los contratos de refacción agrícola, pudiera tener la central para el cobro de sus acreencias. Ese embargo equivaldría a garantizar el pago de la sentencia con el remanente que quedase a favor del colono después de saldados los créditos de la central. La situación legal no varía, no debe variar a nuestro juicio, por el mero hecho de que el embargo se haya practicado después de haberse entregado las cañas a la central para

ser molidas y convertidas en azúcar y finalmente en dinero efectivo. En uno u otro caso, existiendo un contrato de refacción en que el colono está obligado a entregar a la central las cañas producidas con el dinero por ella anticipado, lo único que puede embargar el acreedor del colono es lo que a éste pueda sobrar, o sea el *"equity"* que pueda quedarle, en cañas o en dinero, después que la central se haya cobrado. No creemos necesario para la· validez del embargo, que la operación aritmética necesaria para determinar el montante exacto del balance a favor del colono se haya practicado con anterioridad a la práctica del embargo. Si ése fuese un requisito necesario, por la misma razón tendría que sostenerse que *no es posible embargar el interés que pueda corresponder a un accionista o socio, sin antes practicar una liquidación de la corporación o sociedad, para poder determinar el haber del deudor.

Las relaciones entre la central y el colono son en cierto modo similares a las de los socios entre sí. La central anticipa los fondos necesarios para la siembra y cultivo de las cañas. El colono aporta el terreno y su trabajo. Son las cañas las que, a manera de haber social, garantizan a la central la devolución de su capital y al colono el fruto de su labor.

El interés del colono en el remanente del producto de sus cañas es un interés que tiene existencia real y efectiva, dependiendo la determinación de su cuantía de una simple operación aritmética. A su muerte pasa a sus heredores, o a sus acreedores si los tuviera, de igual manera que cualquiera otra propiedad tangible.

El artículo 246 del Código de Enjuiciamiento Civil provee:

"Todas las cosas, semovientes, *dinero y demás bienes,* así muebles como inmuebles, *o cualquier interés en ellos,* pertenecientes al deudor declarado tal por la sentencia, no exentos por la ley, y toda propiedad y derecho respecto de ella, ocupado o embargado en el pleito, están sujetos a la orden de ejecución. Las acciones y participación en cualquiera corporación o compañía, y deudas y créditos y toda

la propiedad real o personal o cualquier interés en la misma, *y todos los demás bienes no susceptibles de entrega manual,* podrán ser embargados en virtud de la orden de ejecución, *de igual modo que en los autos de embargo...* Hasta efectuarse un embargo, los bienes no estarán afectados por la orden de ejecución.'' (Bastardillas nuestras.)

Convenimos con el apelante en que ''sólo pueden ser objeto de embargo los bienes pertenecientes al demandado en el momento del embargo o los que existan en poder de una tercera persona, que sean de su propiedad.'' Y aceptamos también su contención de que las disposiciones del artículo 246, supra, son aplicables a los embargos para asegurar la efectividad de una sentencia.

El interés o participación que en el producto de las cañas corresponde al demandado es, sin duda alguna, un interés o derecho de propiedad que estaría sujeto a una orden de ejecución de sentencia. Esa orden de ejecución no puede afectar los bienes de un deudor hasta que se haya efectuado un embargo. Y el embargo de bienes que no son susceptibles de entrega manual inmediata—como no lo es el balance favorable de una liquidación que aún no se ha practicado—debe practicarse de igual modo que en los autos de embargo para asegurar la efectividad de una sentencia.

La sección 2 de la Ley para asegurar la efectividad de sentencias, después de proveer las reglas a que deberá ajustarse el aseguramiento, dice:

''(*h*) En lo no previsto en las reglas precedentes, el tribunal discrecional y equitativamente adoptará las medidas procedentes para asegurar la efectividad de la sentencia.''

La sección 10 de la citada ley dispone que la prohibición de enajenar bienes muebles y el embargo de los mismos se practicarán depositando los bienes de que se trate en poder del tribunal o de la persona designada por éste, bajo la responsabilidad del demandante.

En el caso de autos el márshal notificó al agente de la central haber embargado hasta la cantidad de $1,500 el pro-

ducto líquido que quede en la central a favor del demandado Vieta, de la cual cantidad ni la central ni el demandado podrán disponer; y le notificó además, "que deberá retener en su poder como agente de la corporación mencionada, el producto líquido que hasta la fecha tenga, o de ahora en adelante pueda tener, perteneciente al demandado Salvador Vieta Puig, hasta la mencionada cantidad de $1,500 que deberá entregar al márshal suscribiente tan pronto como haya liquidado dichas cañas."

Somos de opinión que el embargo en este caso quedó legalmente trabado y que la corte inferior no erró al sostener la validez de su orden.

■ Discutiremos ahora los alegados errores en que se basa el segundo recurso:

(A) Alega el demandado apelante que la fianza prestada por el demandante en 20 de junio, 1938, debía contener una cláusula que la hiciera retroactiva al día 1 del mismo mes y año, fecha en que se practicó el embargo.

La objeción carece de fundamento. De acuerdo con los términos de la fianza que consta en autos, después de mencionar la radicación de la demanda, la súplica de la misma, la expedición de la orden de embargo y el requerimiento de fianza para garantizarlo, los principales y los fiadores se obligan en la forma siguiente:

"POR TANTO, Nosotros, (todos los demandantes) como principales y Cándido A. Martínez y Emilio Gándara, como fiadores, libre y espontáneamente nos obligamos mancomunada y solidariamente para responder de la suma de mil dollars, $1,000.00, importe de esta fianza o cualquier parte de la misma que fuere necesario, para atender a los daños y perjuicios que puedan irrogarse a los demandados Salvador Vieta Puig, Cruz Fontánez Lorenzano y Manuela Rodríguez García, *como consecuencia del embargo trabado* y en caso que así proceda en ley." (Bastardillas nuestras.)

No es necesaria, a nuestro juicio, la llamada cláusula *nunc pro tunc* que exige el apelante. No tenemos duda de que el demandado Vieta podría recobrar, de acuerdo con los tér-

minos de la fianza, los daños sufridos por él dentro del término del 1 al 20 de junio, "como consecuencia del embargo trabado" el día primero de dicho mes de junio, 1938.

■ (B) Que la fianza está firmada solamente por Raimundo Sierra y no por los otros codemandantes.

El demandante Raimundo Sierra es padre de los otros demandantes; y todos alegan ser condueños de la finca que reclaman. La demanda y la petición de embargo fueron presentadas a nombre y para beneficio de todos y cada uno de ellos. La fianza debe ser considerada como otorgada por Raimundo Sierra a nombre y para beneficio de todos los demandantes. Estos serían de todos modos responsables al demandado, sin necesidad de otorgar fianza, por un embargo injustificado de sus bienes.

El demandante Raimundo Sierra aparece ser dueño de una mitad indivisa de la finca, que adquirió durante su matrimonio con la madre de los otros demandantes. En tal concepto, el demandante tendría derecho a una mitad de la suma de $5,900 que se reclama en la demanda y tendría derecho también a pedir el aseguramiento de la sentencia en cuanto a la parte que en la misma pueda corresponderle.

La falta de las firmas de los otros demandantes no constituye un defecto perjudicial a los intereses del demandado, ni es a nuestro juicio suficiente para invalidar la fianza y anular el embargo. Si los fiadores son solventes, el demandado está ampliamente garantizado por la fianza en la forma en que aparece otorgada. Sin embargo, como pudiera suceder que las firmas de los otros demandantes se hubiesen omitido por algún error involuntario, no obstante estar dichos demandantes dispuestos a firmar la fianza, opinamos que el caso debe devolverse a la corte inferior para que ésta requiera a dichos demandantes para que suscriban la obligación, haciendo constar que sus efectos deberán retrotraerse al día 1 de junio de 1938, fecha en que se practicó el embargo.

■ (C) El hecho de que la fianza se haya constituído a favor de todos los demandados, cuando el embargo fué decretado solamente contra el demandado Vieta, no invalida la obligación. Las dos codemandadas, cuyos bienes no han sido embargados, seguramente nada sufrirán como consecuencia del embargo de los bienes de Vieta. Éste está garantizado por el importe íntegro de la fianza.

■ (D) De la transcripción de evidencia aparece que el día 5 de agosto de 1938, a petición de los demandados, comparecieron ante la corte inferior los dos fiadores para ser examinados en cuanto a su solvencia económica.

El fiador Emilio Gándara declaró que él y sus dos hermanos son dueños por partes iguales e indivisas de dos fincas, una de 138 y otra de 18 cuerdas, ambas radicadas en Cidra; que él tiene su residencia en Caguas; que las fincas están inscritas y las contribuciones se pagan a nombre de los tres hermanos; que las dos fincas tienen un valor de veinte a veinticinco mil dólares; que la de 138 cuerdas está tasada en $8,800 y la de 18 en $720; que además tiene cuatro casas en Cidra, siendo una de ellas una panadería por la que le ofrecieron y no aceptaron cinco mil dólares; que no tiene ninguna deuda, excepto un pagaré al portador por $5,000 que él garantizó con las dos fincas rústicas, pero ese pagaré no ha sido negociado y está aún en sus manos.

El otro fiador, Cándido Martínez, declaró que tiene bienes por más de $2,000, entre ellos una casa en Caguas sobre la cual pesa una hipoteca a la Home Owners Loan Corporation por $4,838.62; que dicha casa está valorada en $9,415.18; que tiene otras propiedades, dos casas, una valorada en $4,000 y otra en $1,000.

El demandado tuvo una oportunidad de examinar a los fiadores en cuanto al derecho de *homestead* que ellos pudieran reclamar sobre las propiedades de que alegaron ser dueños, y no la aprovechó. La omisión en el juramento de los fiadores de la frase ''con exclusión de toda propiedad exenta

de ejecución,'' además de haber sido subsanada por la renuncia del demandado a su derecho a examinar a los fiadores sobre el particular, resulta inmaterial y no perjudicial al demandado, toda vez que según resulta del récord los fiadores aparecen ser ampliamente solventes y poseedores de varias propiedades, sobre todas las cuales no podrían reclamar derecho de *homestead*.

Por las razones expuestas *debe confirmarse la orden recurrida que dictó la corte inferior el 26 de agosto de 1938 y que fué objeto del recurso de apelación núm. 7870; y confirmarse asimismo la resolución dictada el 10 de agosto de 1938, que fué objeto del recurso núm. 7892, con la sola modificación de que el caso sea devuelto a la corte inferior para que la fianza sea completada con la firma de los otros demandantes que no la firmaron originalmente, con lo cual quedarán obligados los principales y fiadores desde el 1 de junio de 1938, fecha en que se practicó el embargo.*