BANCO POPULAR DE PUERTO RICO, demandante y recurrido, *v.* RAFAEL H. VÁZQUEZ, h/n/c TROPICAL CONSTRUCTION COMPANY, demandado y recurrido; MARYLAND CASUALTY COMPANY, interventora y recurrida; CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, interventora y recurrente; BANCO POPULAR DE PUERTO RICO, demandante y recurrido, *v.* RAFAEL H. VÁZQUEZ, h/n/c TROPICAL CONSTRUCTION COMPANY, demandado y recurrido; MARYLAND CASUALTY COMPANY, interventora y recurrente; CORPORACIÓN DE RENOVACIÓN URBANA Y VIVIENDA DE PUERTO RICO, interventora.

*Números:* R-64-42, R-64-44    *Resueltos:* 1ro. de abril de 1969

*José R. Vélez Torres, Josefina Ruiz Carrillo, José M. Cabreras Deetjen, Eugenio Ramos Ortiz* y *Raúl Barquet Trujillo,* abogados de la Corporación de Renovación Urbana y Vivienda de Puerto Rico; *Baragaño, Trías, Saldaña, Harris & Francis* y *William H. Preston, Jr.,* abogados del Banco Popular; *Rivera Zayas, Rivera Cestero & Rúa,* abogados de Maryland Casualty Company.

Sala Segunda integrada por el Juez Asociado Señor Hernández Matos como Presidente de Sala y los Jueces Asociados Señores Santana Becerra, Dávila y Torres Rigual.

EL JUEZ ASOCIADO SEÑOR SANTANA BECERRA emitió la opinión del Tribunal.

En el recurso R-64-42 expedimos auto de revisión a instancias de la Corporación de Renovación Urbana y Vivienda de Puerto Rico (CRUV). En el recurso R-64-44 expedimos

auto de revisión a instancias de la Maryland Casualty Co. Ambos recursos se solicitaron contra la sentencia dictada por la Sala de San Juan del Tribunal Superior en 10 de diciembre de 1963 que determinó el derecho preferente del demandante-recurrido Banco Popular de Puerto Rico sobre determinadas sumas de dinero.

De acuerdo con las conclusiones de hecho archivadas por la Sala sentenciadora:

(1) La Corporación de Renovación Urbana y Vivienda (CRUV) contrató con Rafael H. Vázquez haciendo negocios como Tropical Construction Co. la construcción de dos urbanizaciones públicas una en Trujillo Alto y otra en Luquillo.

(2) En cumplimiento de las condiciones del contrato, Rafael H. Vázquez prestó dos fianzas suscritas por Maryland Casualty Co. para garantizar el fiel cumplimiento, ejecución y pago de las obras.

(3) De acuerdo con lo dispuesto en el inciso (b) del apartado noveno de las condiciones generales del contrato de obra, la CRUV descontaba de las certificaciones periódicas sometidas por el contratista por obra realizada, el equivalente de un 10%. Dicha cláusula de las condiciones generales lee textualmente así en el idioma en que se contrató. [1]

(4) El 22 de agosto de 1962, en virtud de las disposiciones del contrato, la CRUV dio por terminado el mismo por incumplimiento del contratista Rafael H. Vázquez. Para esa fecha ya el contratista había paralizado por sí mismo los trabajos. La obra fue terminada por la propia CRUV con la intervención de otros contratistas. Para el día 18 de sep-

---

[1] "In making such partial payments for the work, there shall be retained 10% of the estimated amount until final completion and acceptance of all work covered by the Contract; Provided, however, that after 50% of the work has been completed, if the Corporation determines that the Contractor's performance and progress have been satisfactory, the Corporation *may make* any of the remaining partial payments in full or any subsequent monthly work properly performed and progressing satisfactorily". (Énfasis nuestro.)

tiembre de 1963 en que se vio la vista del caso la CRUV era la entidad que pagaba por la terminación de los proyectos sin que hasta esa fecha la Maryland Casualty Co., como fiadora de Vázquez, hubiera pagado cantidad alguna para su terminación.

(5) Rafael H. Vázquez y Maryland Casualty Co. tenían firmado un documento a favor de Maryland denominado *Blanket Indemnity Agreement*, de 24 de noviembre de 1958, en virtud del cual la Maryland, como fiadora, se reservaba ciertos derechos del contratista sobre el contrato. [2]

(6) En el proyecto de Luquillo, al ser terminado por nuevos contratistas, fue necesario hacer remodelación de las zapatas para lo cual hubo que destruir las mismas por no tener el concreto requerido y por ser éste de inferior calidad.

(7) Durante el mes de julio de 1962 Rafael H. Vázquez realizó trabajos en el proyecto de Luquillo que debían ser pagados. A la fecha en que Vázquez cayó en incumplimiento y la CRUV se hizo cargo de terminar las obras, la CRUV tenía retenida en concepto del 10% mencionado en el párrafo 3 anterior, la cantidad de $86,210.13.

(8) Para agosto de 1962 había pendiente una certificación sometida por Vázquez a la CRUV por la cantidad de $16,933.11, después de la retención del 10%.

---

[2] La cláusula pertinente de dicho acuerdo de indemnización, en el idioma en que se pactó, lee así:

"That upon notice to, or discovery by, the Surety of the failure of the Applicant to comply with any provisions of any contract bonded under this agreement, the Surety may immediately take possession of such plant and materials as the Indemnitors may own or have upon, or adjacent to, or intended to be used upon said work, so that the Surety may use the same in the prosecution of such contract, and right to possession of such plant and materials shall not be considered as waived by any delay on the part of said Surety to exercise said right. In the event of the Applicant named in any such bond being declared in default by the obligee therein named, the Surety shall have the right to collect and receive all reserve percentages and all moneys due and to become due such Indemnitors under said contract and to hold and apply the same as collateral to this agreement."

(9) Declaró también como hechos probados la Sala sentenciadora: (a) que el Banco Popular había estado financiando a Vázquez en estos proyectos; (b) que en conversaciones habidas entre la fiadora Maryland Casualty Co. y el Banco Popular ésta había autorizado a la CRUV en 26 de julio de 1962 a que satisficiera al contratista Vázquez 50% del total retenido y que esas cantidades fueran enviadas al Banco para reducir la deuda del contratista. Esta determinación de Maryland en beneficio del Banco no fue aceptada por la CRUV.

La presente cuestión litigiosa se suscitó con la interposición por el Banco Popular, en 19 de junio de 1962, de una demanda contra Rafael H. Vázquez en cobro de pagarés a favor del tenedor por el monto de $64,500 de principal e intereses adeudados y honorarios de abogado.

Para asegurar la efectividad de la sentencia que en su día pudiese recaer a su favor, el Banco obtuvo una orden de embargo en 19 de julio de 1962 de varios bienes de Rafael H. Vázquez; entre ellos se ordenó el embargo de la cantidad de $86,210.13 que por concepto de la retención del 10% existía en poder de la CRUV sujeta a las resultancias del contrato.

Vázquez no contestó la demanda y en 30 de agosto de 1962 la Secretaría de la Sala de San Juan registró sentencia a favor del Banco por las cantidades reclamadas.

El día anterior al registro de la sentencia, 29 de agosto de 1962, Maryland Casualty Co. radicó demanda de intervención y reclamó un derecho preferente al del Banco Popular sobre los fondos en la CRUV que pudieran pertenecerle a Vázquez, derecho preferente que invocó en razón de las cláusulas de las fianzas otorgadas por ella y del pacto de indemnización antes transcrito.

En abril 30, 1963, la CRUV interpuso demanda de intervención. Alegó el incumplimiento de Vázquez; invocó un derecho preferente bajo el contrato de obras sobre cantidades que pudieran pertenecer a Vázquez, para afrontar los costos

de su incumplimiento y la terminación del contrato. Visto el caso en los méritos, a base de los hechos que determinó probados la Sala sentenciadora dictó sentencia con los siguientes pronunciamientos:

"Vistas las conclusiones de hechos y de derecho arriba expuestas que se hacen formar parte de esta sentencia, el Tribunal declara que el demandante Banco Popular de Puerto Rico tiene un derecho preferente a la interventora Maryland Casualty Company en relación con los fondos de las certificaciones presentadas y en proceso a la fecha de haberse declarado al demandado Rafael H. Vázquez 'in default' y que asimismo el demandante Banco Popular de Puerto Rico tiene el derecho preferente a las cantidades de las certificaciones del mes de julio de 1962 que estaban en proceso de aprobación contra la interventora CRUV hasta la fecha en que la interventora Maryland Casualty Company renunció por su carta del 26 de julio de 1962 a dichas cantidades e igualmente tiene derecho preferente en relación con la parte del remanente del fondo de retención acumulado hasta la fecha en que la interventora Maryland Casualty Company se allanó a que se le pagase al demandado el cincuenta por ciento (50%) del mismo y solamente en el caso de surgir deficiencias que corregir o reclamaciones relacionadas con los proyectos de Trujillo Alto y Luquillo la interventora CRUV puede disponer de dichas sumas. Se imponen las costas a la interventora Maryland Casualty Company, a CRUV y al demandado Rafael H. Vázquez sin incluir honorarios de abogado."

En estos recursos ambas recurrentes impugnan los anteriores pronunciamientos. Maryland sostiene que tiene un derecho preferente sobre el Banco Popular a las cantidades pendientes de pago, en virtud de sus pactos con el contratista Vázquez. Basándose en las cláusulas del contrato de obra y en el hecho de que Vázquez no cumplió con el contrato, la CRUV impugna igualmente dichos pronunciamientos y sostiene que ella nada le debe o debe deberle a Vázquez, y tiene derecho a retener la cantidad embargada. Alega la CRUV que por disposición de la ley de su creación dichas cantidades no eran embargables ya que habiendo incumplido

el contratista, correspondían a ella bajo el contrato y no a éste. Invoca también la CRUV el hecho que la fiadora Maryland Casualty Co. no había terminado las obras ni había aportado cantidad alguna para su terminación bajo sus obligaciones como fiadora. No es necesario resolver en los méritos aquí ahora esos planteamientos. Veamos el derecho aplicable:

El Banco Popular no fue parte contratante en estos negocios jurídicos en calidad o capacidad alguna, como lo fueron Vázquez el contratista, Maryland la fiadora y CRUV la propietaria de las obras. Siendo así, el derecho del Banco Popular surge únicamente de la orden de embargo dictada por la Sala de San Juan del Tribunal Superior en aseguramiento de sentencia o como acreedor por sentencia sobre bienes embargados. Dicha orden de embargo es la ley que rige la cuestión litigiosa. La referida orden de embargo reza así:

"(a) El Alguacil de la Sala de San Juan del Tribunal Superior del Tribunal General de Justicia de Puerto Rico procederá a embargar los siguientes créditos: $34,714.95 correspondientes al proyecto P.R. 370 en el pueblo de Trujillo Alto y $51,495.18 correspondientes al proyecto P.R. 355 en el pueblo de Luquillo, que a su favor con la Corporación de Renovación Urbana y Vivienda de Puerto Rico por aproximadamente la cantidad de $86,210.13 tiene el demandado, Rafael H. Vázquez, y requerir de la Corporación de Renovación Urbana y Vivienda de Puerto Rico la entrega de dicha cantidad *si tal crédito fuere exigible en la actualidad*. La Corporación de Renovación Urbana y Vivienda de Puerto Rico si tal crédito fuere exigible en la actualidad entregará al Alguacil de la Sala de San Juan del Tribunal Superior de Puerto Rico la cantidad de $86,210.13 y, si no lo fueren, *retendrá en su poder la indicada cantidad hasta que la misma fuere exigible, en cuya fecha la remitirá y entregará al referido funcionario*. En caso de no ser exigible en la actualidad dichos créditos, la Corporación de Renovación Urbana y Vivienda de Puerto Rico retendrá en su poder, *como depositaria* designada por este Tribunal y sujeta al embargo que se ordena, la cantidad de $86,210.13, quedándole prohibido pagarla o disponer de ella en forma otra alguna y la remitirá, como

queda dicho, *cuando sea exigible,* al Alguacil de la Sala de San Juan del Tribunal Superior del Tribunal General de Justicia de Puerto Rico en concepto de bienes embargados por el Banco Popular de Puerto Rico en este procedimiento." (Énfasis nuestro.)

Con posterioridad al registro de la sentencia el Banco Popular solicitó su ejecución. En varias ocasiones señaló al Alguacil bienes a ser embargados que de hecho lo fueron, y vendidos en subasta, habiéndoselos adjudicado el Banco.

Hemos examinado los autos y no existe orden de embargo decretada por el tribunal ni en aseguramiento de sentencia, ni para su ejecución, ni embargo trabado sobre las certificaciones que estaban pendientes de pago por labor realizada por Vázquez para julio y agosto, cuando fue terminado el contrato.

■ No habiéndose ordenado y trabado embargo por el tribunal sobre el monto de las certificaciones pendientes de aceptación y pago al terminarse el contrato, no eran procedentes en la sentencia los pronunciamientos respecto a derechos preferentes del Banco sobre el monto de dichas certificaciones, dependiendo el Banco para su derecho de la existencia de tal embargo por no ser él parte contratante en el contrato de obra. El mero hecho de ser un acreedor general por sentencia tampoco daba al Banco derecho a dichos pronunciamientos. Véanse: Arts. 1821 al 1829 Código Civil, ed. 1930. Cf. *P.R. Bedding Mfg. Corp.* v. *Herger,* 91 D.P.R. 519 (1965).

■ En lo que concierne a la cantidad de $86,210.13 sobre la cual se trabó embargo, la orden se dictó condicionada a cuando fuera líquida y exigible dicha suma a favor del deudor Vázquez. Los autos demuestran que debido al incumplimiento de Vázquez, al ordenarse el embargo de esa suma, al celebrarse el juicio y al dictarse la sentencia recurrida, no existía determinación sobre el particular.

168

En vista de lo anteriormente expuesto, *los pronunciamientos respecto a las certificaciones en trámite al terminarse el contrato serán revocados. En lo que concierne a la cantidad de $86,210.13, la sentencia se dejará sin efecto, y se devolverán los autos con instrucciones de que: (1) Se determine con la prueba pertinente si la referida cantidad de $86,210.13, concluidas las obras finalmente, ha llegado a ser propiedad de Vázquez, o parte de ella. De no corresponderle a Vázquez parte alguna de dicha suma, nada ha de corresponderle al Banco, que como acreedor por embargo, no tiene más derechos en esos fondos en manos de un tercero que los que a su deudor pudiera corresponder, y (2) De resultar por la prueba que esta cantidad o parte de ella es líquida a favor de Vázquez, estaría entonces en orden determinar el derecho preferente a la misma entre el Banco como acreedor por embargo y Maryland como fiadora, siempre que se hubiere demostrado que con posterioridad a fallarse el caso por el Tribunal Superior, Maryland desembolsó cantidades a la CRUV en descargo de sus obligaciones como fiadora del contrato.*

*Se dictará sentencia conforme a lo expresado en el párrafo anterior.*