F. D. RICH COMPANY OF PUERTO RICO, INC., peticionaria, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE SAN JUAN, HON. DOMINGO RAFFUCCI, JUEZ, demandado, ANÍBAL L. ARSUAGA, INC., interventora.

*Número:* O-70-7    *Resuelto:* 16 de junio de 1970

*Amadeo, Benet & Oliveras, Rodolfo Gluck Figueroa* y *Emigdio R. Sellés,* abogados de la peticionaria; *Rodríguez Ema, Rodríguez Ramón, Benítez Gautier & Zequeira, D. Padín Mimoso* y *A. Emanuelli Belaval,* abogados de la interventora.

*Amadeo, Benet & Oliveras, Rodolfo Gluck Figueroa* y *Emigdio R. Sellés,* abogados del peticionario; *Rodríguez Ema, Rodríguez Ramón, Benítez Gautier & Zequeira, D. Padín Mimoso* y *A. Emanuelli Belaval,* abogados de la interventora.

EL JUEZ ASOCIADO SEÑOR RAMÍREZ BAGES emitió la opinión del Tribunal.

El planteamiento en este caso exige resolver si procede el embargo (*garnishment*) por un suplidor de un subcontratista del trabajo de mecánica en un proyecto de hogares de un alegado crédito del subcontratista en manos del contratista principal de dicho proyecto de hogares. El día anterior a la notificación del embargo el contratista principal había dado por terminado el contrato del subcontratista

debido a su incumplimiento y el trabajo de mecánica pendiente lo terminó otra firma contratada y pagada por otras dos personas.

Por dos razones que relacionamos a continuación concluimos que dicho embargo no procedía.

La controversia surge con motivo de que la interventora Aníbal Arsuaga, Inc. (en lo sucesivo designada como Arsuaga) que es la suplidora en cuestión, al obtener una sentencia en contra de Metropolitan Mechanical Constructors Inc. (en lo sucesivo designada como Metropolitan), la subcontratista del trabajo mecánico del referido proyecto, y su fiador, por la suma de $29,920.69, solicitó y obtuvo del tribunal de instancia una orden de embargo en aseguramiento de dicha sentencia. Previo señalamiento al efecto, el alguacil notificó a la peticionaria (en lo sucesivo designada como Rich), que era el contratista principal del proyecto, que "ha procedido a embargar hasta esas sumas ($29,920.69 de principal y $5,000 de honorarios de abogado) todo el derecho, título e interés que tenga Metropolitan en la suma de $65,000 que ustedes adeudan a dicha demandada por esa fecha . . . ." (2 de agosto de 1968). Dicha orden apercibió a Rich que no deberá hacer pago alguno a Metropolitan sin la intervención de Arsuaga y/o el tribunal y que cualquier pago de tales montos sería nulo y constituiría un desacato al tribunal.

Rich se negó a entregarle cantidad alguna al alguacil. Arsuaga entonces solicitó que el "Tribunal ordenase, entre otros, a Rich . . . a comparecer a mostrar causa de por qué no debería ser condenada por desacato al Tribunal al no cumplir con el pago de las sumas embargadas y/o de por qué no debería expedirse mandamiento de ejecución de sentencia, entre otros, contra ella."

En la conferencia con antelación a la vista sobre la anterior solicitud, las partes estipularon que:

(1) Rich contrató a Metropolitan para realizar el trabajo mecánico del proyecto por la suma de $391,649.

(2) De esa cantidad Rich aún no había pagado a Metropolitan la suma de $57,189.29 el día primero de agosto de 1968 cuando Rich notificó a la fiadora de Metropolitan que Metropolitan había incurrido en incumplimiento del contrato y Rich había decidido terminar su contrato con Metropolitan.

(3) La notificación de embargo a Rich se llevó a cabo el 2 de agosto de 1968.

(4) El 9 de septiembre de 1968 los señores Nolla y Morris contrataron a David Andújar, Inc. (en lo sucesivo designado como Andújar) para terminar el contrato de Metropolitan con Rich, la que no ha satisfecho cantidad alguna de la retención de $57,189.29 para la terminación por Andújar de dicho contrato.

(5) Convinieron las partes que quedaba por determinar (a) el monto de lo pagado por Nolla y Morris a Andújar; (b) si el subcontrato quedó terminado a satisfacción de la dueña del proyecto que lo era la Corporación de Renovación Urbana y Vivienda (CRUV); y (c) si Rich está adeudando o no a Metropolitan los $57,189.29 bajo el contrato original.

(6) En adición a lo expuesto, el tribunal de instancia concluyó que Rich alegó que la CRUV tiene reclamaciones contra la retención de $57,189.29 por deficiencias en plomería y prueba de humo que ascienden a $2,951.25.

De la prueba testimonial y documental aducida en la referida vista aparece que:

(7) Andújar ha recibido alrededor de $44,000 de unos señores Nolla y Morris para terminar el trabajo de mecánica que originalmente subcontrató Metropolitan.

(8) Consta en récord (a) la aprobación de Rich de este subcontrato con Andújar; (b) que el trabajo bajo este subcontrato se terminó a satisfacción de la CRUV, excepción de la prueba de humo y unas deficiencias en los registros que se iban a descontar al contratista ascendiendo ambas

a la suma de $2,951.25; (c) que Rich no ha pagado suma alguna a Andújar por la terminación del trabajo de mecánica.

(9) El proyecto de hogares en su totalidad fue aceptado por la CRUV en 7 de enero de 1969.

(10) La CRUV le debe a Rich unos $370,000. El Sr. Luis Enrique Santiago, Jefe de la División de Contratos de la CRUV a cargo de la parte administrativa del proyecto de hogares en cuestión, testificó que las reclamaciones de suplidores y subcontratistas asciende a $200,000 además de una deficiencia en el empañetado en relación con lo cual hay contratos por unos $60,000; que hasta donde sabe, Metropolitan no tiene reclamación; que si Metropolitan va a buscar dinero a la CRUV porque Rich se lo debe, la CRUV no se lo paga.

(11) La retención de $57,000 bajo el subcontrato de Metropolitan no era por trabajo realizado.

(12) El embargo de Arsuaga era el único recibido por Rich para el 2 de agosto de 1968 de fondos que Rich adeudaba a Metropolitan.

(13) Un ejecutivo de Rich testificó que Metropolitan era insolvente. La representación legal de Arsuaga informó que ésta no ha podido ejecutar ninguna sentencia en contra de Metropolitan.

(14) Un ejecutivo de Rich testificó que "Aníbal Arsuaga tiene una reclamación y otras suplidoras también tienen otras reclamaciones . . . algunas por demandas; algunas por cartas; otras por notificación a la CRUV, y en el caso suyo [el de Arsuaga] creo que no haya fijado ninguna cantidad . . . ."

Concluyó el tribunal de instancia que:

"Sin embargo, la prueba estableció que las deficiencias de plomería indicadas ascienden a $825.00 y que la reclamación por la referida prueba de humo ascendía a unos $2,126.25, por lo cual, de tener que responderle Rich a la CRUV por tales

reclamaciones, las mismas ascenderían en total a $2,951.25. Si deducimos dicho importe de los $57,189.29, tenemos que concluir, y así lo hacemos, que Rich adeuda a Metropolitan Mechanical la suma de $54,238.04, suma ésta que tiene en su poder y sujeta a las resultancias de este pleito desde el 2 de agosto de 1968 en que parte de ella fuera embargada por la demandante en aseguramiento de sentencia."

El tribunal de instancia distinguió este caso del de *Banco Popular* v. *Vázquez*, 97 D.P.R. 160 (resuelto en 1 de abril de 1969), porque en el caso ante nos "se llevó a cabo un embargo completo y definitivo . . . de los fondos que Rich adeudaba a Metropolitan mientras que en *Banco Popular*, supra, la orden de embargo . . . limitaba el embargo a que el crédito a embargarse fuera exigible en la actualidad . . . ."; que Rich violó la orden de embargo al no hacer efectivo al alguacil el importe de lo embargado, pero que el tribunal prefería condenar a Rich a pagar a Arsuaga dentro de un término de 15 días la suma de $27,434.62 más $2,700 de honorarios de abogado o de lo contrario la secretaría del tribunal expidiera mandamiento de ejecución de sentencia en contra de dicha firma.

Apunta Rich que el tribunal de instancia incidió (1) al concluir que para el 2 de agosto de 1968 Rich "adeudaba suma alguna a Metropolitan"; (2) que Arsuaga había embargado fondos en posesión de Rich a pesar de que para esa fecha se había dado por terminado el contrato de Metropolitan y el balance hasta el precio total del contrato no se adeudaba ya que en esa fecha el trabajo no se había realizado; y (3) al utilizar el procedimiento de desacato para determinar si Rich adeudaba cantidad alguna a Metropolitan.

Arguye Rich que bajo los hechos previamente expuestos no puede sostenerse que Metropolitan fuera acreedora de Rich en 2 de agosto de 1968 pues Rich había dado por terminado el subcontrato de Metropolitan el día antes y la

prueba revela que desde entonces ésta no tenía reclamación en contra de Rich y por lo tanto cualquier persona subrogada a los derechos de Metropolitan, como lo era la suplidora Arsuaga, tampoco podía reclamar en contra de Rich; que el embargo no pudo congelar fondos de Metropolitan en poder de Rich porque en ese momento no se habían liquidado las obligaciones de unos y otros y de hecho el contrato se había dado por terminado sin que se liquidara y sujeto a reclamaciones de terceras personas y a una reclamación de daños y perjuicios por incumplimiento de contrato.

En contrario, sostiene Arsuaga que el tribunal de instancia oyó a los testigos, apreció la prueba y concluyó como cuestión de hecho que Rich adeudaba a Metropolitan $54,238.04 por lo que el embargo trabado fue completamente válido; que Rich trata de enriquecerse injustamente a costa de Metropolitan y sus accionistas.

■ La Regla Núm. 56 de las de Procedimiento Civil autoriza el embargo de fondos en posesión de un tercero (*garnishment*). *E.L.A.* v. *Tribunal Superior*, 98 D.P.R. 524 (1970); *Banco Popular* v. *Vázquez*, supra.

Nótese que en el caso ante nos se procedió a embargar ". . . todo derecho, título e interés de Metropolitan en la suma de $65,000 que ustedes [Rich] adeudan a dicha demandada." Además, se apercibió a Rich que no hiciese pago alguno a Metropolitan sin la intervención del tribunal y del demandante. No se le requirió que consignase, hasta la cantidad de la reclamación de Arsuaga, cualesquiera sumas que se dispusiese a pagar a Metropolitan con posterioridad al embargo en cuestión. Obviamente se asumió que en 2 de agosto de 1968, cuando se trató de trabar el referido embargo, los $57,189.29 no pagados por Rich bajo el subcontrato de Metropolitan, dicha suma pertenecía a ésta al extremo que ésta podía reclamarla judicialmente con éxito. Por lo tanto se procedió al embargo directo de $29,920.69 de principal y $5,000 de honorarios de abogado, cuantía de la recla-

mación del suplidor Arsuaga, entendiéndose que el no hacer efectiva esa cantidad al alguacil en virtud de la orden de embargo constituía un desacato al tribunal que la expidió.

■ Con respecto a la procedencia de un embargo (*garnishment*) de fondos en posesión de un tercero, los tribunales han elaborado las siguientes normas:

(1) Es esencial que el tercero posea bienes de la persona contra quien se dictó la sentencia que se interesa ejecutar.

(2) El derecho del ejecutante en contra del tercero no puede ser mayor que el que tenía el deudor por sentencia en contra de dicho tercero.

(3) La prueba (*test*) de la procedencia del embargo consiste en determinar si en el momento de trabarse, el deudor por sentencia tenía una buena causa de acción en contra del tercero para recobrar los bienes que se tratan de embargar.

(4) La deuda que se trate de embargar debe ser una suma líquida o determinable mediante cómputo o hechos conocidos o por hechos subsiguientes, sin contingencias cuando se traba el embargo.

■ (5) Una deuda incierta y contingente en el sentido de que pueda que nunca venza y sea pagadera no es embargable. Sin embargo, la negación de responsabilidad o una contra-reclamación por cumplimiento defectuoso o el estar un arbitraje tramitándose en relación con una controversia sobre la cuantía adeudada, no hace la obligación tan incierta o contingente que la inmunice de ser embargada.

■ (6) El procedimiento de embargo (*garnishment*) bajo la Regla 56 antes citada no es una acción separada y distinta, sino un paso adicional dentro de la acción principal. Es un proceso remedial por naturaleza con el propósito de alcanzar bienes del deudor por sentencia cuando la ejecución ordinaria no lo logra. *Banco Popular*, supra; *Walker* v. *Paramount Engineering Co.*, 353 F.2d 445 (6th Cir. 1965); *O'Leary* v. *Superior*

*Court of Gila County*, 452 P.2d 101 (Ariz. 1969) ; *American Nat. Ins. Co.* v. *United States Fidelity & G. Co.*, 215 So.2d 245 (Miss. 1968) ; *Peninsula Ins. Co.* v. *Housen*, 238 A.2d 95 (Md. 1968) ; *Trinity Universal Ins. Co.* v. *Bellmead State Bank*, 396 S.W.2d 163 (Texas 1965) ; *Sundberg* v. *Boeing Airplane Co.*, 328 P.2d 692 (Wash. 1958) ; *Samuels* v. *Superior Court of Los Angeles County*, 81 Cal. Reptr. 216 (1969) ; *Carter* v. *Sherwood Plaza Inc.*, 164 S.E.2d 867 (Ga. App. 1968) ; *Baron* v. *Villareal*, 241 N.E.2d 227 (Ill. App. 1968).

En *Trinity Universal Ins. Co.* supra, el contratista Marble convino construir un edificio para una cooperativa. Fue fiado por Trinity. Al no poder Marble continuar con el contrato, Trinity lo siguió, dejando que Marble realizase el trabajo mediante cesión por Marble a Trinity de todos sus pagos y derechos bajo el contrato de construcción. El Bellmead State Bank, que había obtenido sentencia en contra de Marble por $53,469.75, notificó a la cooperativa el embargo del balance que ésta adeudaba a Marble en la suma de $25,966.44, cantidad que la cooperativa consignó en el tribunal. Se resolvió que la suma retenida por la cooperativa no era embargable pues Marble no tenía derecho alguno a dichos fondos. La fiadora cuyos fondos se utilizaron para cumplir la obligación de Marble se subrogó en los derechos del dueño de la obra de aplicar los balances del contrato a completar la obra. No era necesario que se hiciera una declaración formal de incumplimiento. El banco como acreedor ejecutante no adquirió en tales fondos mayores derechos a los mismos que los que tenía su deudor.

En *Sundberg*, supra, el suplidor de un contratista notificó un embargo de fondos retenidos por el dueño de la obra bajo el contrato de construcción. Se resolvió que el contratista no podía recobrar los fondos retenidos porque su derecho de pago estaba sujeto a que completase el contrato lo que no hizo sino que lo hizo por él su fiadora; que como

el contratista había violado su contrato, en el momento del embargo el dueño nada debía al contratista; que, además, la retención no había sido liquidada cuando se notificó el secuestro al dueño ya que estaba sujeta a reclamaciones que podrían surgir de la violación del contrato por el contratista.

Bajo circunstancias similares se resolvió en *Carter*, supra, que al abandonar su contrato de construcción, el contratista no podía recibir suma adicional alguna del dueño de la obra y, por lo tanto, no existía crédito alguno a su favor en manos del dueño que fuese embargable por un acreedor del contratista.

En *Banco Popular*, supra, se trabó un embargo por el Banco Popular sobre un alegado crédito por $86,218.13 que un contratista tenía a su favor con la CRUV condicionado a que dicha suma fuera liquidada y exigible a favor de dicho contratista. Disponía la orden de embargo, además, que si dicha cantidad no fuese exigible, la CRUV retendría en su poder la misma hasta que fuere exigible cuando la entregaría al alguacil en concepto de bienes embargados por el banco.

Se dejó sin efecto la sentencia (que determinó preferente el derecho del referido banco en relación con los fondos y certificaciones presentados y su proceso a la fecha de declararse que el contratista había incurrido en incumplimiento) en lo que concierne a la cantidad en cuestión. Se devolvieron los autos para determinar si concluidas las obras, dicha cantidad o parte de ella ha llegado a ser propiedad del contratista pues de no corresponderle parte alguna, nada ha de corresponderle al banco que, como acreedor por embargo no tiene más derechos en esos fondos en manos de un tercero que los que a su deudor pudiera corresponder; que si se determinaba que la cantidad es líquida a favor del contratista, habría que determinar el derecho preferente a la misma entre el banco como acreedor por embargo y la fiadora del contratista en caso que dicha fiadora desembolsara

cantidades a la CRUV en descargo de sus obligaciones como fiadora.

En el caso ante nos la prueba demuestra que: (1) el día antes de tratarse de trabar el embargo de fondos en manos de Rich, éste había dado por terminado el subcontrato de Metropolitan y así se lo notificó a la fiadora de dicho subcontratista; (2) la cantidad retenida no cubría trabajo alguno realizado por Metropolitan; ese trabajo lo realizó a satisfacción de Rich y de la CRUV el subcontratista Andújar a quien se le pagaron unos $44,000 por ese trabajo por otras dos personas; Rich no ha pagado cantidad alguna por la terminación por Andújar del trabajo mecánico del referido proyecto de hogares.

■ Bajo las anteriores circunstancias, es evidente que al dar Rich por terminado el subcontrato de Metropolitan el día 1ro. de agosto de 1968 debido al incumplimiento de ésta, nada debía Rich a Metropolitan desde esa fecha, máxime cuando la prueba demuestra que la cantidad de $59,189.29 aún no pagada por Rich bajo el subcontrato de Metropolitan no cubría trabajo realizado por esta última. Además, en 2 de agosto de 1968 la referida retención no era una deuda líquida y sin contingencias. Por el contrario, estaba sujeta a reclamaciones y reajustes en vista de los derechos (1) de la fiadora de Metropolitan y de otros en virtud de los pagos hechos a Andújar por su terminación del trabajo mecánico; (2) de la CRUV, como dueña del proyecto; (3) de Arsuaga y otros suplidores y acreedores de Metropolitan, y de Rich en vista de su posible reclamación en contra de Metropolitan basada en el incumplimiento por ésta de su subcontrato del trabajo mecánico del proyecto. Cuando en 2 de agosto de 1968 Arsuaga trató de embargar la referida suma de $59,189.29 en posesión de Rich, Metropolitan carecía en ese momento de una causa de acción en contra de Rich para recobrar dicha suma. Como el derecho del ejecutante Arsuaga en contra de Rich no podía ser mayor que el de Metropolitan

en contra de Rich, Arsuaga carecía de derecho alguno para embargar la referida suma retenida en 2 de agosto de 1968. Además, dicha suma no resultaba ser una deuda líquida, determinable y sin contingencias de Rich a favor de Metropolitan en dicha fecha.

En tal virtud, *se revocará la resolución del tribunal de instancia dictada en este caso en 19 de diciembre de 1969 y se devolverá el caso a dicho tribunal para la continuación de los procedimientos en armonía con lo aquí resuelto.*

El Señor Juez Presidente y el Juez Asociado Señor Hernández Matos no intervinieron. El Juez Asociado Señor Santana Becerra se inhibió.

—O—

EN MOCIÓN DE RECONSIDERACIÓN

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

San Juan, Puerto Rico, a 22 de febrero de 1971

El 16 de junio de 1970 emitimos una opinión y sentencia en este caso dejando sin efecto la resolución del tribunal de instancia que condenó a la recurrente F. D. Rich Company of P.R., Inc., a pagar a la interventora Aníbal L. Arsuaga, Inc., la suma de $27,438.62 más $2,700 por concepto de honorarios de abogado. *F. D. Rich Company of P.R., Inc.* v. *Tribunal Superior*, 99 D.P.R. 158 (1970).

A instancia oportuna de la interventora y con la debida comparecencia de la recurrente, hemos vuelto a considerar las importantes cuestiones planteadas en el caso y estamos convencidos de que procede la reconsideración solicitada.

Aunque los hechos pertinentes aparecen en dicha opinión, es conveniente resumirlos aquí para una mejor inteligencia de lo que ahora decidimos.

El 22 de julio de 1968 Aníbal L. Arsuaga, Inc., incoó demanda contra Metropolitan Mechanical Constructors, Inc.,

y National Insurance Co. reclamándole a la primera la cantidad de $29,920.62 por concepto de materiales de construcción, de la cual cantidad garantizó la segunda la suma de $18,884.13 mediante fianza de pago. Simultáneamente con la presentación de la demanda, el demandante solicitó y obtuvo el aseguramiento de la efectividad de la sentencia que en su día pudiera recaer, señalando al alguacil, entre otros bienes, un alegado remanente que por la cantidad de $65,000 le adeudaba la recurrente Rich a Metropolitan Mechanical Constructors, Inc., con motivo de un contrato de plomería celebrado entre ellos.

El 2 de agosto de 1968 se notificó el embargo a la recurrente por la suma reclamada más $5,000 de honorarios de abogado sobre "todo derecho, título e interés que tenga la demandada Metropolitan Mechanical Constructors, Inc. en la suma de $65,000, que ustedes adeudan a dicha demandada para esta fecha." Metropolitan Mechanical Constructors, Inc., se allanó a que se declarara con lugar la demanda y se dictara sentencia en su contra obligándose a satisfacer el monto de la reclamación dentro del término de 10 días a partir de la estipulación. A tenor con lo estipulado, el tribunal de instancia dictó sentencia el 28 de febrero de 1969, dictando posteriormente mandamiento de ejecución sobre las cantidades adeudadas por F. D. Rich Company of Puerto Rico, Inc., a Metropolitan Mechanical Constructors, Inc., y que anteriormente habían sido objeto de embargo.

Ante el mandamiento de ejecución notificado por el alguacil, Rich asumió la posición de que nada debía a Metropolitan, razón por la cual no tenía que entregar cantidad alguna al tribunal.

Con motivo de la posición asumida por Rich, Aníbal L. Arsuaga, Inc., solicitó el 1ro. de abril de 1969 del tribunal de instancia que citara a Rich para mostrar causa por la cual no debería ser condenado por desacato al no cumplir con el pago de las sumas embargadas o, en la alternativa,

expedirse mandamiento de ejecución contra ella. El tribunal celebró una conferencia con antelación al juicio el 12 de junio de 1969 y llevó a cabo la vista en los méritos de la moción para mostrar causa el 18 de junio. Basándose en lo estipulado en la conferencia y en la prueba desfilada en la vista, el tribunal concluyó, en lo que aquí nos concierne, que:

a) el remanente de $65,000 sobre el cual se efectuó el embargo se originó con motivo del subcontrato celebrado en el 1966 entre Metropolitan Mechanical Constructors, Inc., y F. D. Rich Company of Puerto Rico, Inc., por la cantidad de $391,649.00,

b) hasta agosto de 1968 Rich había satisfecho a Metropolitan bajo el subcontrato la suma de $334,459.71 quedando pendiente un remanente de $57,189.29,

c) el 1ro. de agosto de 1968, precisamente un día antes de llevarse a cabo el embargo solicitado por Arsuaga, Inc., en el pleito de cobro de dinero contra Metropolitan, Rich notificó a la fiadora National Insurance Company que había dado por terminado el subcontrato por incumplimiento de Metropolitan,

d) el subcontrato fue terminado posteriormente por David Andújar, Inc., quien fue contratado para esos fines por Miguel J. Nolla y John Morris, garantizadores éstos de National Insurance Company en la fianza de pago que ésta expidió a favor de Metropolitan, [1]

e) Nolla pagó a Andújar, Inc., la cantidad de $42,874.25,

f) la Corporación de Renovación Urbana y Vivienda aceptó de conformidad la terminación del contrato, salvo que reclamó deducciones por deficiencias en plomería por $825 y la cantidad de $2,126.25 por concepto de una prueba de humo.

A tenor con las anteriores determinaciones, el tribunal de instancia dedujo del mencionado remanente de $57,189.29

[1] National Insurance Company al ser demandada por Arsuaga como fiadora de Metropolitan, radicó a su vez demanda contra terceros Miguel Nolla, John Morris y David S. Castro, Inc., alegando que éstos se comprometieron solidariamente a satisfacerle cualquier suma que ella viniese obligada a pagar por razón de las fianzas expedidas a favor de Metropolitan.

las reclamaciones de la CRUV ascendentes a $2,951.25, concluyendo que Rich adeudaba a Metropolitan un balance neto de $54,238.04, la cual cantidad quedaba sujeta a las resultancias del pleito. Concluyó, además, el tribunal que Rich violó la orden de embargo al no hacer efectivo al alguacil el importe de lo embargado. En su consecuencia, dictó resolución condenando a la recurrente F. D. Rich Company of Puerto Rico, Inc., a pagar a la interventora Aníbal L. Arsuaga, Inc., la suma de $27,438.62 más $2,700 para honorarios de abogados.

Ésta fue la resolución que revocamos el 16 de junio de 1970 y que ahora reconsideramos. Los fundamentos que aducimos para la revocación fueron al efecto de: a) que al dar Rich por terminado el subcontrato de Metropolitan el 1ro. de agosto de 1968 debido al incumplimiento de ésta, *nada* le debía Rich a Metropolitan; b) que al ordenarse el embargo el 2 de agosto de 1968 no existía una deuda líquida y sin contingencia de Rich a favor de Metropolitan, estando, por el contrario, el remanente del contrato sujeto a reclamaciones y reajustes en vista de los derechos de la "fiadora"([2]) de Metropolitan y de otros en virtud de los pagos hechos a Andújar por su terminación del trabajo mecánico, de la CRUV como dueña del proyecto, y de Arsuaga y otros suplidores y acreedores de Metropolitan.

■ Considerada de nuevo la cuestión, no estamos de acuerdo en que al dar Rich por terminado el subcontrato por incumplimiento de Metropolitan, nada debía a ésta desde ese momento. Una vez terminada la obra, como lo fue, a satisfacción del dueño, la Corporación de Renovación Urbana y Vivienda, el contrato entre ellos quedó sujeto a un ajuste de cuentas, o sea, a liquidación. Esta liquidación se llevó a cabo en la vista celebrada por el tribunal de instancia, que como ya vimos, reflejó un remanente neto a favor de

---

([2]) Propiamente la referencia debe ser no a la fiadora National Insurance Company sino a Nolla y Morris, que como indemnizadores de ésta fueron lo que pagaron a Andújar por la terminación de la obra.

Metropolitan de $54,238.04. La prueba desfilada sostiene ampliamente no sólo ésta, sino también, las demás conclusiones del tribunal.

Es claro que Rich no puede hacer suyo este remanente. Sus derechos contractuales se limitaban a exigir de Metropolitan y, en su defecto, de la fiadora de ésta, la terminación de la obra a satisfacción del dueño a un costo de $391,649.00. El acto suyo de declarar por terminado el contrato por incumplimiento de Metropolitan no mejoró su relación contractual, confiriéndole, como pretende, derecho alguno al remanente. La obra fue terminada a satisfacción del dueño, que era todo lo que él podía exigir, independientemente de quien realizara la terminación. Venía, por ello, obligado al pago total del contrato de Metropolitan.

■ No es sostenible la contención de Rich para no pagar el precio total del contrato a Metropolitan de que habían reclamaciones pendientes de otros suplidores. Primero, porque esta contención nunca fue debidamente sustanciada por la prueba. Segundo, porque aunque pudieran haber otras reclamaciones, ninguna tenía preferencia sobre la de Arsuaga, ya que éste, como sabemos, obtuvo a su favor un embargo, luego una sentencia final y firme y, finalmente, un mandamiento de ejecución. Al efecto, el Art. 1824 del Código Civil, 31 L.P.R.A. sec. 5194, dispone que gozan de preferencia los créditos que sin privilegio especial consten por sentencia firme, si hubiesen sido objeto de litigio. Véase, además, *General Motors Acceptance Corp.* v. *Tribunal Superior*, 85 D.P.R. 329 (1962).

■ La declaración de incumplimiento y la subsiguiente terminación de la obra por Nolla y Morris tampoco tuvieron el efecto de conferir el remanente a éstos, a menos, claro está, que Metropolitan les hubiese cedido sus derechos.[3]

---

[3] Así parecen entenderlo Nolla y Morris, puesto que, en la demanda que radicaron contra Rich el 8 de abril de 1970 solicitaron que el rema-

El incumplimiento solo vino a poner en vigor las obligaciones subsidiarias de National como fiadora y de Nolla y Morris como indemnizadores. (⁴) La terminación de la obra por Nolla solo le dió derecho a una causa de acción contra Metropolitan en reembolso de las sumas que pagaron a Andújar por la terminación de la obra. Al respecto, el Art. 1737 del Código Civil, 31 L.P.R.A. sec. 4911, dispone que el fiador que paga por el deudor, debe ser indemnizado por éste. Debe tenerse presente, sin embargo, que el derecho de Nolla al reembolso está subordinado al derecho preferente de Arsuaga en virtud del mencionado Art. 1824, según vimos anteriormente.

## —II—

La notificación de la orden de embargo, como se recordará, se efectuó sobre todo derecho, título e interés que pudiera tener Metropolitan en el remanente. En otras palabras, sobre el derecho—cualquiera que fuese—que pudiera tener Metropolitan en el remanente una vez liquidado el contrato.

Estuvimos equivocados en nuestra opinión de 16 de junio de 1970 al caracterizar la orden de embargo como una de *garnishment* aplicando indebidamente las limitaciones técnicas de esta institución—deuda líquida, exigible y sin contingencias—a una medida provisional en aseguramiento de sentencia dictada bajo la Regla 56 de las de Procedimiento Civil.

El procedimiento de *garnishment* en las jurisdicciones de los Estados Unidos es de origen estatutario. Generalmente, los tribunales no tienen facultad para conceder este remedio,

---

nente se le pagara directamente a Metropolitan con la obligación de que ésta les reembolsara la suma de $42,874.45 que pagaron a David Andújar, Inc., por la terminación de la obra. También pidieron que en la alternativa se les pagara directamente a ellos.

(⁴) National Insurance Company no reclama derecho al remanente ya que no incurrió en gasto alguno para la terminación de la obra.

en ausencia de un estatuto que lo autorice. 6 Am. Jur.2d sec. 627, pág. 631; 38 C.J.S. *Garnishment* sec. 1.

Vale decir que las normas que gobiernan este remedio no son uniformes, variando en cada jurisdicción de acuerdo con los términos específicos del estatuto que lo autoriza. 7 Moore's *Federal Practice*, sec. 64.04(3) pág. 1511. Por considerarse como un remedio oneroso, en algunas jurisdicciones se ha resuelto que los términos del estatuto son de interpretación estricta. *Cold Metal Process Co. v. McLeoth Steel Corp.*, 126 F.2d 185. No obstante, hay jurisdicciones en que jurisprudencialmente se ha permitido el remedio aún con deudas inciertas y contingentes. *McKendall v. Patullo*, 160 Atl. 202 (R.I.).

▆ Nuestra Regla 56, por el contrario, no requiere que una deuda sea líquida y sin contingencias para ser objeto de un embargo en aseguramiento de sentencia. No es necesario una liquidación previa del contrato para poder efectuar un embargo de los derechos que una parte pueda tener sobre el mismo para así asegurar la efectividad de la sentencia que en su día pudiera recaer. Véanse: *Banco Popular v. Vázquez*, 97 D.P.R. 160 (1969); *General Motors Acceptance Corp. v. Tribunal Superior*, ante; *Ruiz v. Commercial Insurance*, 83 D.P.R. 324 (1961); *Sierra v. Vieta*, 56 D.P.R. 224 (1940).

▆ La Regla 56 de Procedimiento Civil confiere al tribunal suficiente flexibilidad para dictar las medidas que estime necesarias o convenientes, según las circunstancias del caso, para asegurar la efectividad de las sentencias. Su única limitación es que la medida sea razonable y adecuada al propósito esencial de la misma, que es garantizar la efectividad de la sentencia que en su día pudiera dictarse. Esta flexibilidad, tan necesaria para la administración de justicia, es la mayor virtud de la Regla 56, virtud que debemos promover y preservar en vez de mixtificarla con conceptos y

requisitos técnicos ajenos a nuestro sistema procesal como lo es el de *garnishment*.

*Al dejar sin efecto nuestra sentencia de 16 de junio de 1970 y confirmar, como lo hacemos ahora, la resolución del tribunal de instancia del 19 de diciembre de 1969* condenando a F. D. Rich de Puerto Rico, Inc., a pagar a la demandante Aníbal L. Arsuaga, Inc., la suma de $27,438.62, más $2,700 por concepto de honorarios de abogados, no hacemos otra cosa que reconocer y ratificar la jurisprudencia establecida por este tribunal en los casos anteriormente citados de *Banco Popular* v. *Vázquez; General Motors Acceptance Corp.* v. *Tribunal Superior; Ruiz* v. *Commercial Insurance y Sierra* v. *Vieta,* supra.

*Se devolverá el caso al tribunal de instancia para ulteriores procedimientos consistentes con lo anteriormente expuesto.*

El Juez Asociado Señor Ramírez Bages disiente en voto separado.

—O—

Opinión disidente del Juez Asociado Señor Ramírez Bages

San Juan, Puerto Rico, a 22 de febrero de 1971

Convengo que la Regla Núm. 56 de las de Procedimiento Civil es flexible, y no está sujeta a las limitaciones y requisitos técnicos del recurso estatutario de *garnishment* prevaleciente en los Estados Unidos.

Sin embargo, disiento del resultado a que ha llegado la opinión mayoritaria por las razones que relaciono a continuación.

1.—Cuando Metropolitan Constructors Inc. (en lo sucesivo designada Metropolitan), incurrió en el incumplimiento de su subcontrato con el contratista principal F. D. Rich of P.R. Inc. (en lo sucesivo designado Rich) con motivo de lo cual éste dio por terminado dicho contrato sin que Metropolitan lo objetase, la siguiente situación prevalecía:

(a) Metropolitan no había terminado la obra subcontratada.

(b) Metropolitan y Rich estipularon que la cantidad de $57,189.29 retenida por Rich bajo el subcontrato con Metropolitan, *no era por trabajo realizado.* En otras palabras, la cantidad pagada por Rich a Metropolitan hasta la fecha en que se dio por terminado el contrato constituía el pago total de la obra que llegó a realizar Metropolitan bajo el referido subcontrato. Consecuencia de esto es que debemos inferir que todos los materiales suplidos por Aníbal L. Arsuaga, Inc. (en lo sucesivo designado Arsuaga), a Metropolitan fueron usados en la obra hasta entonces realizada por Metropolitan o estaban en la parte no utilizados en dicha obra, almacenados por este último.

2.—Requerida la fiadora de Metropolitan para que terminara la obra en cuestión, y habiendo ésta requerido a sus indemnizadores que así lo hicieran, éstos contrataron a Andújar quien la terminó a satisfacción por lo que se le pagó la suma de $42,874.25.

Como no hay prueba en contrario, debemos inferir que no se utilizó material alguno suplido por Arsuaga en dicha terminación.

Tenemos pues que Metropolitan no tiene derecho o título alguno a la suma retenida por Rich cuando su subcontrato fue terminado debido a su incumplimiento. A lo sumo, quizás puede concluirse que deba recibir cualquier remanente de dicha suma retenida luego de satisfecho a los indemnizadores del fiador el costo de la terminación del subcontrato por Andújar y las reclamaciones *de la C.R.U.V.* como dueña de la obra.

Como Arsuaga, en su carácter de suplidor de Metropolitan, no puede reclamar, en cuanto a la referida suma retenida un derecho mayor que el que sobre la misma tenía Metropolitan, nos parece obvio que su sentencia contra Metropolitan sólo puede ser satisfecha de, y el embargo en

ejecución de la misma sólo puede ser efectivo sobre, aquella parte de la suma retenida que en derecho pertenezca y sea pagadera a Metropolitan, no siéndolo, por la razón indicada, la cantidad rembolsable por el costo de terminar el referido subcontrato.