EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| New Hampshire Insurance Co.; American International Insurance Co. of Puerto Rico<br><br>Peticionarias<br><br>v.<br><br>Ing. Luis García Passalacqua, et al.<br><br>Recurridos | Certiorari<br><br>2021 TSPR 7<br><br>205 DPR \_\_\_\_\_ |

Número del Caso: CC-2017-0572

Fecha: 25 de enero de 2021

Tribunal de Apelaciones:

    Región Judicial de San Juan-Caguas Panel II

Abogados de la parte peticionaria:

    Lcdo. Héctor M. Laffitte
    Lcdo. Juan Marqués-Díaz
    Lcda. Myrgia M. Palacios-Cabrera

Abogados de la parte recurrida:

    Lcdo. Alfredo Fernández Martínez
    Lcdo. José M. Martínez Rivera

Materia: Derecho de Obligaciones y Contratos: Contrato de fianza, Derecho de subrogación, Prelación de créditos.

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

New Hampshire Insurance Co.;
American International Insurance
Co. of Puerto Rico

     Peticionarias

        v.

Ing. Luis García Passalacqua,
*et al*.

     Recurridos

CC-2017-0572      *Certiorari*

Opinión del Tribunal emitida por el Juez Asociado señor COLÓN PÉREZ

En San Juan, Puerto Rico a 25 de enero de 2021.

En el presente caso -- el cual tiene como objeto ciertos contratos de fianza de cumplimiento y pago -- nos corresponde determinar si el Departamento de Hacienda tiene derecho a un crédito preferente conforme a las disposiciones relativas a la prelación de créditos dispuestas en nuestro Código Civil, *infra*, sobre cierto dinero consignado en el Tribunal de Primera Instancia. Lo anterior, en el contexto de un pleito -- del cual dicha dependencia gubernamental inicialmente no formaba parte -- instado en contra de un alegado deudor contributivo de ésta.

Adelantamos que, luego de un detenido y cuidadoso análisis de los hechos ante nuestra consideración, así como del derecho aplicable, contestamos dicha interrogante en la negativa. Veamos.

I.

La recurrida Miramar Construction Company Inc. (en adelante, "Miramar Construction") es una corporación dedicada al negocio de construcción. Por su parte, las peticionarias New Hampshire Insurance Company y American International Insurance Company (en adelante, "NHIC y AIICO") son compañías aseguradoras autorizadas a emitir fianzas de cumplimiento y pago para garantizar la ejecución de contratos de obras de construcción. Estas últimas fueron las compañías que -- mediante contrato -- aseguraron varias obras de construcción a cargo de la contratista, Miramar Construction.

El 3 de abril de 2003 NHIC y AIICO presentaron ante el Tribunal de Primera Instancia una demanda en cobro de dinero, entre otras acciones, en contra de Miramar Construction y sus accionistas.[1] En la misma, alegaron que esta última les adeudaba la suma de $21,478,449.00 en virtud de determinados contratos de indemnización y de fianza otorgados con la mencionada compañía de construcción, así como de las fianzas emitidas como

---

[1] Los accionistas de Miramar Construction Co. y demandados principales son el señor Luis García Passalacqua, la señora Margarita Juárez Iturregui y la Sociedad Legal de Gananciales compuesta por ambos; y el señor José R. Berríos Pagán, la señora Carmen Reilova Vélez y la Sociedad Legal de Gananciales compuesta por ambos.

consecuencia de dichos acuerdos. Por la importancia que tienen los mismos para la correcta disposición de este caso, procedemos a enumerar, a grandes rasgos, los contratos aquí en controversia.

A. *General Contract of Indemnity* (contrato de indemnización)

En virtud del *General Contract of Indemnity*, suscrito el 7 de abril de 1995 se acordó que NHIC y AIICO tendrían una causa de acción en contra de Miramar Construction si incurrían en una pérdida o si se desembolsaba dinero en virtud de las fianzas emitidas o de cualquier otro contrato que se otorgara en relación con las fianzas, como lo fue el *Surety Contractor Agreement*. En particular, la cláusula 15(2) reconoció la cesión de titularidad de todos los fondos recibidos por los proyectos afianzados en consideración del cumplimiento de las referidas fiadoras con el desembolso del dinero conforme a las fianzas emitidas por éstas. La mencionada cláusula leía de la siguiente manera:

> FIFTEENTH: […] (2) The Indemnitor(s) do hereby jointly and severally agree as of this date, that the said Surety shall be subrogated to all of their rights, privileges and properties as Principal in any or all such contracts; and the Principal and/or indemnitor(s) do hereby assign, transfer and convey to said Surety, as of this date, all of their right, title and interest in and all of the deferred payments and retained percentages arising out of any such contract, progress payments, and any and all moneys and properties that may be, and that thereafter may become due and payable on account of, and

all claims and actions and causes of actions related to, any such contract or on account of or relating to extra work or materials supplied in connections therewith, and any and all other moneys or properties hereby agreeing that such moneys and the proceeds of such payments, properties, claims, actions and causes of action shall be the sole property of the Surety, to be by it credited upon any sum due or to become due to the Surety under the terms of this agreement. Véase, Apéndice de *certiorari*, pág. 31.

B. *Performance and Payment Bonds* **(contratos de fianza de ejecución y pago)**

El 10 de noviembre de 1998 AIICO emitió la fianza de ejecución y pago número 160-20927 por la suma de $5,589,000.00 para garantizar la ejecución de Miramar Construction bajo el contrato de construcción otorgado con Río Grande Investment, LLC, para la construcción del proyecto denominado Plaza Las Piedras Shopping Center, así como para garantizar el pago de los materiales incorporados en dicha obra. En igual fecha, AIICO emitió la fianza de ejecución y pago número 160-25128 por la cantidad de $9,800,601.60 para garantizar el cumplimiento de la referida contratista y los materiales incorporados en el proyecto denominado Plaza Río Grande Shopping Center. Véase, Apéndice de *certiorari*, pág. 207.

C. *Surety Contractor Agreement*

Posteriormente, el 26 de enero de 2001, Miramar Construction otorgó el *Surety Contractor Agreement* mediante el cual AIICO reconoció varias de las fianzas emitidas, entre ellas la número 160-20927

antes mencionada. Dichas fianzas se prestaron para que Miramar pudiese cumplir con sus obligaciones a corto plazo, específicamente con la mano de obra y materiales en diferentes proyectos de construcción.[2] **Ello, luego de que Miramar Construction le informara a AIICO que estaba enfrentando ciertas dificultades económicas en cuanto al cumplimiento con sus obligaciones financieras hacia los subcontratistas y materialistas.** Allí, las partes reconocieron e incorporaron al mismo lo establecido en el contrato de indemnización suscrito el 7 de abril de 1995. Por ello, puntualizaron lo siguiente: "[n]othing contained here shall waive, limit, alter or amend any of Surety's rights, defenses or liability under law or under terms of such performance bond or under *General Contract of Indemnity"*.

D. *Ratification of Assignment to American International Insurance Company of Puerto Rico* (ratificación)

Este contrato, pactado el 26 de enero de 2001, ratificó el contenido de la cláusula 15(2) del contrato de indemnización antes mencionado. Además, estableció lo siguiente:

> **That subrogation**, assignment and transfer relates and covers all the contract bonded by the Surety or its affiliates pertaining to the Surety […].
>
> As a result of said "General Contract of Indemnity", the **Surety is actually the owner of all rights of the bonded contractor in**

---

[2] Véase, Apéndice de *certiorari,* pág. 40.

**those contracts and in all other contracts bonded by the Surety** or by any other of the companies that form part of group known as "American International Companies." **Therefore, the bonded contractor acknowledges that the Surety is entitled to have the owner in each and everyone of those projects pay the contract price directly to the Surety** or, at the option of the Surety, in a check to the order of the bonded contractor and the Surety, jointly. Apéndice de *certiorari*, pág. 47. [3]

Así las cosas, el 15 de marzo de 2004 Río Grande Investment, LLC y Las Piedras Investment, LLC solicitaron al foro primario que aceptara su intervención en el litigio de referencia a los únicos fines de consignar la suma de $1,115,000.00; balance que le adeudaban a Miramar Construction en virtud de una transacción relacionada a ciertos proyectos afianzados por NHIC y AIICO. Lo anterior, con el fin de que el Tribunal de Primera Instancia pudiese determinar a quién le correspondía la cantidad de dinero consignada, si a Miramar Construction o a NHIC y AIICO. A dicha solicitud, Miramar Contruction se allanó.

Evaluado el escrito presentado por Río Grande Investment, LLC y Las Piedras Investment, LLC, el 25 de mayo de 2005 el Tribunal de Primera Instancia dictó *Sentencia Parcial* aceptando la mencionada consignación y

---

[3] De lo anterior se desprende que la fiadora posee todos los derechos de su fiado -- la contratista -- en virtud del contrato de indemnización previamente discutido. Asimismo, la contratista reconoció que la fiadora tenía derecho a que el dueño de la obra pagara las sumas convenidas mediante los contratos directamente a ésta. Así pues, podemos colegir que el hecho de que los pagos no se hicieran directamente a NHIC y AIICO no era óbice para reconocer los derechos conferidos a estas últimas a través de los contratos y la figura de la subrogación.

relevando a las interventoras de cualquier responsabilidad. Dicha *Sentencia Parcial* fue oportunamente notificada a todas las partes en el pleito.

Enterado del mencionado proceso judicial, el 5 de agosto de 2005 el Departamento de Hacienda presentó una *Notificación de Embargo a Terceras Personas en Poder de Bienes Muebles y a Deudor Moroso*. En la misma, la referida dependencia gubernamental solicitó el embargo de los fondos consignados ante el Tribunal de Primera Instancia por Río Grande Investment, LLC y Las Piedras Investment, LLC. Ello, con el propósito de cobrar una deuda contributiva de Miramar Construction correspondiente a los años 1998 a 2001, ascendente a $681,888.00, más los intereses. La aludida deuda surgió a raíz del incumplimiento de Miramar Construction con su obligación de remitir a dicha agencia la retención patronal de los salarios de sus empleados. **En esta notificación, el Departamento de Hacienda señaló que solicitaba el embargo por la cantidad que correspondiera finalmente a su deudora, Miramar Construction.**

Meses más tarde, el 7 de marzo de 2006 para ser específicos, NHIC y AIICO comparecieron ante el foro primario y solicitaron autorización para retirar la totalidad de los fondos consignados en dicho foro por Río Grande Investment, LLC y Las Piedras Investment, LLC. **Señalaron que tales fondos no le pertenecían a Miramar Construction, sino a éstas, ya que se subrogaron en los**

**derechos de la última, por motivo de los pagos hechos a tenor con su obligación bajo los contratos de indemnización y las fianzas expedidas a su favor.**

El 26 de junio de 2006, el Tribunal de Primera Instancia dictó una *Resolución* declarando *no ha lugar* la solicitud de NHIC y AIICO. **El foro primario apoyó su denegatoria en la existencia de controversia respecto a quién correspondían los fondos.**

En desacuerdo con la determinación del Tribunal de Primera Instancia, NHIC y AIICO presentaron un primer recurso de *certiorari* ante el Tribunal de Apelaciones. Examinado el mismo, el foro apelativo intermedio emitió una *Sentencia* modificando la *Resolución* apelada. Ello a los fines de devolver el caso al Tribunal de Primera Instancia para que celebrara una vista evidenciaria en la que se les concediera a las partes en el presente litigio la oportunidad de presentar prueba sobre la titularidad de los fondos en controversia. En particular, el foro apelativo intermedio dispuso que:

> Lo más conveniente es que Hacienda comparezca como interventor en la vista y demuestre que en efecto procede el embargo trabado sobre el dinero consignado en el Tribunal por corresponder este a Miramar. De igual manera, **las peticionarias tendrán la oportunidad de demostrar que el dinero consignado les pertenece, por lo que no deben quedar afectadas por las reclamaciones contributivas de Hacienda contra Miramar. En la eventualidad de que el dinero corresponda a las peticionarias, el T.P.I. deberá determinar si procede el embargo de Hacienda contra esos fondos.** (Énfasis suplido).

Celebrada la vista ordenada por el Tribunal de Apelaciones, el foro primario le solicitó al Departamento de Hacienda que presentara sus argumentos a través de una demanda de intervención. Acto seguido, estableció la fecha para la celebración de una segunda vista evidenciaria.

Cumpliendo con lo ordenado, el Departamento de Hacienda presentó ante el Tribunal de Primera Instancia una *Demanda de intervención*. Arguyó tener un crédito preferente sobre los fondos consignados, por lo que solicitó la ejecución del embargo para así cobrar la deuda contributiva de Miramar Construction.

El 31 de marzo de 2008, NHIC y AIICO presentaron su contestación a la demanda de intervención. En lo pertinente, levantaron como defensa afirmativa que los fondos consignados no le pertenecían a Miramar Construction y, consecuentemente, la acreencia del Estado no podía ser ejecutada.

Posteriormente, éstas solicitaron al foro primario la disposición sumaria de la controversia en torno a los fondos consignados. Alegaron, a grandes rasgos, la inexistencia de hechos materiales en controversia que impidieran que el Tribunal de Primera Instancia resolviera que el dinero consignado les pertenecía a éstas previo a que el Departamento de Hacienda diligenciara el embargo. **En particular, NHIC y AIICO argumentaron que su derecho sobre dichos fondos surgía**

**del derecho de subrogación como fiadoras -- según establecido en el Art. 1721 del Código Civil, 31 LPRA sec. 4874 -- y de los contratos de indemnización y fianza otorgados entre éstas y Miramar Construction.**

Examinados los planteamientos de ambas partes, el foro primario dictó una *Resolución* en la cual dispuso que sujetaría la adjudicación de la controversia en cuanto a quién tenía un mejor derecho sobre el dinero consignado -- si las fiadoras o el Departamento de Hacienda -- a la resolución final de la controversia relativa al cobro de dinero. Dicha *Resolución* fue oportunamente notificada a todas las partes en el pleito.

Paralelamente, y luego de varios incidentes procesales no necesarios aquí pormenorizar, -- en el pleito sobre cobro de dinero --, el 7 de junio de 2013 el Tribunal de Primera Instancia dictó *Sentencia* en la cual concluyó que NHIC y AIICO desembolsaron una suma millonaria de dinero para beneficio de los demandados y éstos no pagaron la cantidad adeudada, tal cual se obligaron. En consecuencia, se ordenó a Miramar Construction, a pagar a las demandantes la cantidad de $21,478,449.00.

En desacuerdo con lo determinado por el foro primario, Miramar Construction presentó un recurso de apelación ante el Tribunal de Apelaciones. El 13 de septiembre de 2013 el foro apelativo intermedio emitió una *Sentencia* en la que confirmó el dictamen emitido por

el Tribunal de Primera Instancia. Inconforme, Miramar Construction recurrió ante este Tribunal. Sin embargo, esta Curia denegó expedir la petición de *certiorari* presentada por Miramar Construction por lo que la mencionada *Sentencia* advino final y firme.

Así pues, el 30 de abril de 2015 NHIC y AIICO presentaron ante el Tribunal de Primera Instancia una segunda solicitud para el retiro de los fondos consignados. Adujeron que, dadas las determinaciones judiciales que pesaban a su favor, el dinero les pertenecía. Conforme a ello, fundamentaron que:

> Miramar Construction no puede reclamar nada a [las peticionarias] en el presente caso, y los fondos consignados no pueden corresponder de manera alguna a Miramar. Por la misma razón, los fondos no pueden ser embargados por Hacienda para satisfacer una deuda de Miramar. Así los fondos consignados pertenecen exclusivamente a [las peticionarias]. Apéndice de *certiorari*, pág. 298.

El 16 de julio de 2015, el Departamento de Hacienda se opuso y solicitó la adjudicación de los fondos consignados a su favor por el total de la deuda contributiva de Miramar Construction. Alegó que ninguno de los dictámenes judiciales señalados les otorgaba a NHIC y AIICO la titularidad de los dineros consignados. Además, la mencionada dependencia gubernamental sostuvo que "[l]os dineros consignados le pertenecen a Miramar Construction, pues la causa para el pago fue un contrato suscrito entre Miramar Construction y las compañías consignantes por la ejecución de unas obras".

El 21 de julio de 2015, NHIC y AIICO replicaron a dicha moción. Plantearon que el Departamento de Hacienda no podía pretender que éstas pagaran deudas de terceros -- Miramar Construction -- con su dinero. Ello, porque la cláusula número 15 (2) del contrato de indemnización pactado por éstas con Miramar Construction les otorgó la titularidad de todos los fondos que percibiera dicha contratista como pago del dinero que tuvieron que desembolsar por concepto de los proyectos afianzados.

En desacuerdo, Miramar Construction presentó su oposición a la solicitud de retiro de fondos presentada por NHIC y AIICO. Argumentó que NHIC, AIICO y el Departamento de Hacienda eran acreedoras de Miramar Construction. Por ello, señaló que sobre las cuantías consignadas, que a su juicio le pertenecían conforme el Artículo 1824 del Código Civil, 31 LPRA sec. 5194, el crédito del Departamento de Hacienda gozaba de prelación al de las fiadoras. NHIC, AIICO y Miramar Construction presentaron réplicas y dúplicas en las que reiteraron los argumentos antes mencionados.

Examinadas las referidas mociones, el 21 de noviembre de 2016 el Tribunal de Primera Instancia notificó una *Resolución* en la que concluyó que el Departamento de Hacienda tenía un crédito preferente sobre los fondos consignados. Específicamente, el foro primario sentenció:

> [D]eclaramos Ha Lugar la solicitud del Departamento de Hacienda y reconocemos su crédito preferente sobre los dineros consignados por Río Grande Investment, LLC y Las Piedras Investment, LLC. En su consecuencia, se ordena al Departamento de Hacienda a someter en 20 días una tasación actualizada de la deuda contributiva de Miramar Construction Company, Inc.

En cumplimiento con lo anterior, el Departamento de Hacienda sometió una *Certificación de deuda* en la que estableció que la deuda contributiva de Miramar Construction ascendía a $792,148.24. El 16 de diciembre de 2016, NHIC y AIICO presentaron su oposición.

Ese mismo día, el Tribunal de Primera Instancia notificó una *Sentencia parcial* en la cual incorporó e hizo formar parte de dicho dictamen la *Resolución* de 21 de noviembre de 2016. Así, declaró *ha lugar* la demanda de intervención presentada por el Departamento de Hacienda y dispuso que dicha parte tenía un derecho preferente sobre el dinero consignado. Consecuentemente, la deuda contributiva de Miramar Construction sería satisfecha con estos fondos.

Inconformes con el dictamen emitido por el Tribunal de Primera Instancia, NHIC y AIICO recurrieron por segunda vez al Tribunal de Apelaciones. Señalaron que el foro primario había errado al determinar que el Departamento de Hacienda tenía un crédito preferente sobre el dinero consignado. Lo anterior, por entender que Miramar Construction cedió a éstas dichos fondos consignados por Las Piedras Investment, LLC y Río Grande

Investment, LLC, en virtud del contrato de indemnización suscrito en 1995, es decir, diez (10) años antes que el Departamento de Hacienda diligenciara su embargo. En la alternativa, adujeron que, a tenor con la teoría de la subrogación, estos fondos le correspondían.

Por su parte, y en oposición, el Departamento de Hacienda argumentó que el dinero consignado se trataba de uno generado por el trabajo de Miramar Construction y que tenían preferencia sobre dichos fondos tanto en tiempo -- debido a que el diligenciamiento del embargo fue previo a la sentencia de la acción en cobro de dinero -- como en derecho. A su vez, Miramar Construction adujo que la prelación de créditos, y no un contrato privado del cual el Departamento de Hacienda no participó, regía la controversia.

Evaluados los alegatos de ambas partes, el 25 de abril de 2017 el Tribunal de Apelaciones dictó *Sentencia* en la que confirmó el dictamen emitido por el Tribunal de Primera Instancia. A juicio del foro apelativo intermedio, el dinero consignado pertenecía a Miramar Construction por lo que procedía la aplicación del Art. 1824 del Código Civil, *supra*, ante la concurrencia del Departamento de Hacienda y las fiadoras -- NHIC y AIICO -- como acreedores. Sobre el particular, dicho Tribunal sostuvo:

> La acreencia de las [peticionarias] contra Miramar Construction cobró vida a raíz del dictamen del foro primario declarando la

procedencia de la causa de acción en cobro de dinero el 7 de junio de 2013. La notificación de embargo se realizó el 5 de agosto de 2005. De manera, que la acreencia del Estado precede en tiempo a la de las apelantes. La notificación de la deuda contributiva y el correspondiente embargo se dio previo al dictamen judicial a favor de las fiadoras.

En cuanto a la controversia sobre la subrogación, el foro apelativo intermedio expresó que "[l]o resuelto hace innecesaria la discusión del primer planteamiento de error esbozado por [las peticionarias] en la alternativa, que versa sobre el derecho de subrogación de éstas en los derechos de Miramar Construction y las obligaciones contraídas entre las partes".

Insatisfechas con la determinación del Tribunal de Apelaciones, NHIC y AIICO acuden ante nos mediante recurso de *certiorari*. En el mismo, en esencia, señalan que tanto el Tribunal de Primera Instancia, como el Tribunal de Apelaciones, erraron al no considerar el efecto que la figura jurídica de la subrogación de derechos tenía sobre el presente caso, en virtud del contrato de indemnización y de fianza otorgados entre éstas y Miramar Construction. Asimismo, sostienen que el foro primario y el foro apelativo intermedio erraron al concluir que la sentencia adjudicando la reclamación sobre cobro de dinero convirtió a NHIC, AIICO y el Departamento de Hacienda en acreedores concurrentes de los fondos consignados.

Trabadas así las controversias, habiendo expedido el recurso y con el beneficio de la comparecencia de ambas partes, procedemos a resolver.

II.

A.

Como es sabido, conforme a lo dispuesto en el Art. 1042 del Código Civil, 31 LPRA sec. 2992, en nuestra jurisdicción "las obligaciones nacen de la ley, de los contratos y cuasicontratos, y de los actos y omisiones ilícitos o en que intervenga cualquier género de culpa o negligencia".[4] *Demeter Intl. v. Srio. Hacienda,* 199 DPR 706, 726 (2018); *López v. González*, 163 DPR 275, 281 (2004); *Cervecería Corona, Inc. v. Tribunal Superior*, 99 DPR 698, 703 (1971).

El Art. 1044 del Código Civil, 31 LPRA sec. 2994, por su parte, manifiesta que las obligaciones que nacen de los contratos tienen fuerza de ley entre las partes. *Rodríguez García v. UCA*, 2018 TSPR 148 (2018), 200 DPR ___ (2018); *Oriental Bank v. Perapi*, 192 DPR 7, 15 (2014); *VDE Corporation v. F & R Contractors*, 180 DPR 1, 34 (2010). Tal es el caso de los contratos de fianza.

Mediante el contrato de fianza una parte se obliga a pagar o cumplir por un tercero, en caso de éste no hacerlo. Art. 1721 del Código Civil, 31 LPRA sec. 4871.

---

[4] Si bien estamos conscientes que el 28 de noviembre de 2020 entró en vigor la Ley Núm. 55-2020 -- mediante la cual se adoptó el Código Civil de Puerto Rico de 2020 -- a la fecha del otorgamiento de los contratos aquí en controversia estaba vigente el Código Civil de 1930, 31 LPRA sec. 1 *et seq.*

Este contrato es una garantía personal en la que el fiador -- quien puede actuar a título oneroso o gratuitamente -- puede obligarse a menos, pero nunca a más que el deudor principal, tanto en la cantidad como en lo oneroso de la obligación. *Andamios de PR v. JPH Contractor Corp.,* 179 DPR 503 (2010); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652 (2000); *General Electric Credit v. Southern Transport,* 132 DPR 808, 814 (1993).[5]

En cuanto a la naturaleza de este tipo de contrato, el tratadista José Puig Brutau, en su obra *Fundamentos de Derecho Civil*, nos señala que:

> la fianza implica la existencia de una obligación principal y de una obligación accesoria pactada para asegurar el cumplimiento de la primera. La obligación principal es aquella que existe entre acreedor y deudor. Este deudor es el "otro" por el cumplimiento de cuya obligación el fiador se ha obligado hacia el acreedor. La fianza aparece así como una obligación convenida entre acreedor y fiador para asegurar o garantizar el pago o cumplimiento de una obligación. J. Puig Brutau, *Fundamentos de Derecho civil*, 2da ed., Barcelona, Ed. Bosch, 1982, T.2, Vol.2, págs. 587-588.

**En esta relación, el fiador se subroga por el pago en los derechos que el acreedor tenía contra el deudor.** Art. 1738 del Código Civil, 33 LPRA sec. 4912. *United*

---

[5] Cuando se trata de fianzas en la industria de la construcción, éstas son utilizadas como garantía entre los principales actores de las obras de construcción, tales como el dueño de la obra, el contratista, los suplidores de materiales y la mano de obra. Tanto en obras privadas como en obras públicas, como norma general, el dueño de la obra exige del contratista que tramite una fianza que garantice la terminación del proyecto de construcción, así como una que garantice el pago de materiales y de mano de obra. Véase, *San José Realty, S.E. v. El Fénix de PR*, 157 DPR 427 (2002).

*Surety v.* Registradora, 192 DPR 187, 203 (2015); *Sucn. María Resto v. Ortiz*, *supra*, pág. 810; *Gil v. CRUV*, 109 DPR 551 (1980). **Esa subrogación "transfiere al subrogado el crédito con los derechos a él anexos, ya contra el deudor, ya contra los terceros, sean fiadores o poseedores de las hipotecas"**. Art. 1166 del Código Civil, 31 LPR sec. 3250.

En esa dirección, la doctrina reconoce que existen dos maneras en que el derecho de crédito de un fiador puede protegerse, a saber, la acción de reembolso y el derecho de subrogación. Véanse, Arts. 1737 y 1738 del Código Civil, 31 LPRA secs. 4911 y 4912. Al respecto, nos dice Diez Picazo que la diferencia entre el derecho de reembolso, contemplada en el Art. 1737 de nuestro Código Civil, *supra*, y la acción de subrogación del Art. 1738 estriba en que, en el primer caso, el crédito nace en el momento en que el fiador paga al acreedor en la obligación garantizada. L. Díez Picazo, *Fundamentos de Derecho Civil Patrimonial,* Las Relaciones Obligatorias, Madrid, Editorial Civitas, 5ta Ed., 1996, Vol. II, pág. 440. No obstante, el crédito en la acción de subrogación nace desde que se contrae la obligación garantizada, por lo que el fiador tendrá derecho a adquirir los accesorios del crédito, es decir, sus privilegios, preferencias y garantías. Diez Picazo*, op. cit.,* a la págs. 440-41.

B.

Por su parte, es menester discutir aquí lo resuelto por esta Curia en *Sobrinos de Ezquiaga v. Sucn. Hatch*, 38 DPR 599 (1928). Allí, la sociedad mercantil Sobrinos de Ezquiaga (en adelante, "la suplidora") incoó una demanda en contra de Frank B. Hatch (en adelante, "el contratista") en la cual le reclamó cierta cantidad de dinero como consecuencia del crédito que le concedió a este último y por concepto de materiales que suministró para determinado proyecto de construcción. Ese mismo día, la suplidora obtuvo el embargo de bienes del contratista para asegurar dicha cantidad.

Ahora bien, con posterioridad a dicha sentencia, el señor Teodoro Vidal Sánchez (en adelante, "fiador") presentó una demanda de tercería en contra de la suplidora y el contratista con el fin de que se declarase que cierta cantidad del dinero embargado -- el cual incluía determinada suma de dinero recibida por el contratista en virtud de una obra que no culminó -- le pertenecía exclusivamente. Ello, pues el contratista celebró un contrato con el Pueblo de Puerto Rico (en adelante, "dueña de la obra") obligándose a construir un edificio en el cual el fiador Vidal garantizó que éste cumpliera con sus obligaciones contractuales y pagara todos los materiales utilizados en la referida obra. Debido a que el contratista no pudo culminar el proyecto, el

fiador Vidal se hizo cargo de continuarlo. Evaluado lo anterior, el Tribunal de Primera Instancia dictó sentencia en la que declaró que parte del dinero embargado por la suplidora pertenecía al fiador.

Así pues, nos correspondía evaluar si el foro inferior erró al declarar que la cantidad embargada por la suplidora era de la exclusiva propiedad del fiador Vidal por lo que debía quedar a su libre disposición. Luego de evaluar las disposiciones del Código Civil respecto a la subrogación, expresamos que como el fiador Vidal tenía interés en el cumplimiento de la obligación de su fiado – el contratista -- al cumplir por éste, se subrogó en los derechos que surgían a favor del mismo en contra de la dueña de la obra. Consecuentemente, concluimos que por ello y en virtud de los artículos 1171 y 1178 del Código Civil, el dinero pagado por la dueña de la obra por la correspondiente obra ejecutada pertenecía a Vidal como subrogado en los derechos de su fiado.

Posteriormente, en *F.D. Rich Co. v. Tribunal Superior*, 99 DPR 158 (1970), tuvimos la oportunidad de resolver quién tenía derecho a cierta cantidad de remanente que determinada contratista adeudaba a la subcontratista, si la suplidora o los garantizadores de la fiadora quienes culminaron la obra. En este caso, la contratista incumplió ciertas obligaciones contractuales, por las cuales su fiadora tampoco

respondió. A raíz de ello, los garantizadores de la fiadora asumieron las responsabilidades de la referida contratista.

Allí, razonamos que el hecho de que los garantizadores hubiesen culminado la obra, no tuvo el efecto de conferir el remanente a éstos debido a que la subcontratista no les cedió sus derechos. Siendo ello así, concluimos que tal remanente le pertenecía a la suplidora. Es decir si la subcontratista le hubiese cedido sus derechos a los garantizadores, estos últimos hubiesen tenido derecho a la suma de dinero que la contratista le adeudaba a aquella. **Conviene recordar que en el caso ante nuestra consideración, la contratista Miramar cedió sus derechos a las fiadoras NHIC y AIICO en virtud de los contratos ya discutidos, es decir, desde 1995.**

C.

Por otro lado, en lo relacionado a la causa de epígrafe, también precisa hacer mención a la acción directa que tienen los obreros y materialistas en contra del dueño de la obra. Dispone el Art. 1489 del Código Civil, 31 LPRA sec. 4130, que "los que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación." Sobre el particular, conviene repasar lo resuelto por este Tribunal, hace más de cincuenta (50)

años atrás, en *American Surety Co. of New York v. Tribunal Superior,* 97 DPR 452 (1969).

En el referido caso, la American Surety Co. (en adelante, "American") -- como cesionaria de ciertas sumas de dinero adeudadas por concepto de trabajos realizados por la subcontratista Inter American Builders -- presentó ante el Tribunal de Primera Instancia una acción en cobro de dinero en contra de la Asociación de Maestros de Puerto Rico, quien era la dueña de la obra (en adelante, "Asociación"), y varias empresas contratistas y subcontratistas. Así las cosas, -- y dado cierto laudo arbitral donde, en efecto, se determinó que ésta le adeudaba dinero a American --, la Asociación consignó la suma adeudada  sin perjuicio del derecho que sobre este dinero pudiera tener el Estado en virtud de tres (3) órdenes de retención dictadas el 8 de julio de 1965, por vía de aseguramiento de sentencia, en pleitos incoados para el cobro de contribuciones sobre ingresos.[6] Evaluado el caso ante su consideración, el foro primario sostuvo que el crédito del Estado gozaba de preferencia por ser la fecha de la orden de retención anterior al laudo arbitral. Inconforme con el referido dictamen, American Surety acudió ante nos.

---

[6] Mediante las referidas órdenes de retención se le ordenó a la Asociación de Maestros que se abstuviera de transferir, entregar o pagar $8,000 a The Williams Co., Inc., $4,800 a Constructora de las Antillas, Inc., y $70, 386.49 a Southern Builders, Inc. -- empresas contratistas de las obras y deudoras contributivas -- de los dineros que pudieren corresponderle en virtud cierto laudo arbitral.

En el precitado caso, expresamos que como excepción al principio cardinal del derecho de obligaciones sobre el efecto de los contratos sólo entre los otorgantes y sus causahabientes -- conforme dispone el Art. 1209 del Código Civil, *supra* -- "se consagra en el Art. 1489 que los obreros y materialistas de una obra ajustada alzadamente por el contratista tienen acción contra el dueño de la obra hasta la cantidad que éste le adeude a aquél cuando se hace la reclamación". *American Surety Co. of New York v. Tribunal Superior*, *supra*, págs. 454-55. La referida disposición está matizada por consideraciones de orden público, entiéndase, propiciar el pronto pago a quienes ponen su trabajo y materiales así como evitar el enriquecimiento injusto del dueño. *Íd.* No empece a ello, el tratadista Manresa reconoce que no se ha concedido a los obreros o materialistas privilegio alguno, y que su reclamación está sujeta a las vicisitudes que en cuanto a la disposición de su crédito haga el contratista. J. M. Manresa, *Comentarios al Código Civil Español*, 5ta Ed., 1950, Vol. X, págs. 934-35.

**Esbozada la normativa anterior, resolvimos que American se convirtió en acreedora directa de los dueños de las obras desde el instante mismo en que incoó su reclamación y que su crédito no estaba sujeto a los vaivenes de las responsabilidades del contratista por otros conceptos. Por tanto, no se trataba de una situación en la que fuera necesario determinar sobre la**

**prelación de créditos. En consecuencia, se concluyó que American tenía derecho a cobrar -- desde que entabló la acción en cobro de dinero -- las cantidades que se le adeudaban por la empresa contratista y sus subsidiarias y afiliadas hasta la cantidad que las dueñas de las obras adeudaban a éstas a esa fecha.** Véase, además, *Goss Inc. v. Cycrex Const. & Co,* 141 DPR 342 (1996).

Así pues, la norma que pauta dicho caso es que la causa de acción directa de los obreros o materialistas es transferible a las fiadoras. En otras palabras, aquella fiadora que, en virtud de los contratos de fianza, desembolse determinada suma de dinero con el fin de pagar los salarios y materiales de los trabajadores, puede incoar la acción directa que contempla el Art. 1489, *supra*, y reclamar aquellas cantidades que se vio forzada a pagar debido al incumplimiento de su fiado.[7]

---

[7] De igual forma lo entendió la Corte de Distrito de Estados Unidos para el Distrito de Puerto Rico. Véase, a manera persuasiva, *Federal Ins. Co v. Constructora Maza, Inc.,* 500 F. Supp. 246 (1979). En esa ocasión, y refiriéndose a lo resuelto por esta Curia en *Armstrong e Hijos v. Díaz*, 95 DPR 800 (1968) y *American Surety Co. of New York v. Tribunal Superior*, *supra*, la Corte de Distrito para el Distrito de Puerto Rico razonó que

> [w]hat these cases stand for is first, that materialmen and laborers have a privileged "direct action" against the owner of a project for services and materials owed to them by the contractor; second, that this privileged status has its limits; and, third that it is transferable. They definitely do not hold that there cannot exist any beneficial interest in sums retained by the owner". (Énfasis suplido) *Federal Ins. Co. v. Constructora Maza, Inc., supra,* pág. 250.

**Establecido que los obreros y materialistas tienen derecho al dinero que el dueño de la obra debe al contratista, el foro federal razonó que, en virtud de la subrogación, la fiadora tiene el mismo derecho que aquellos una vez ésta haya cumplido sus obligaciones contractuales para con la contratista.** *Íd*. en la pág. 250.

Como podemos colegir, la anterior norma no tiene efecto jurídico alguno en el derecho de subrogación de la fiadora en el lugar del fiado. Por el contrario, el discutido precedente se limita a resolver que la acción directa que poseen los obreros y obreras es transferible a aquellas fiadoras que emiten fianzas de pago y cumplimiento en virtud de las cuales pagan los salarios y materiales que su fiado no sufraga. En conclusión, debido a que American cumplió con el pago de los mencionados gastos, ésta tuvo el beneficio de presentar la acción directa para que fuese reembolsada por los mismos.

Es, precisamente, a la luz de la normativa antes expuesta, que procedemos a disponer del caso que nos ocupa.

III.

Como mencionamos anteriormente, en el caso ante nos, NHIC y AIICO sostienen que el Tribunal de Apelaciones erró al ignorar el efecto que la figura jurídica de la subrogación de derechos y los contratos de cesión otorgados por éstas y Miramar Construction tienen sobre las controversias ante nuestra consideración. Además, arguyen que el tribunal *a quo* erró al concluir que la sentencia adjudicando la acción en cobro de dinero a su

Véase, además, *Segovia Development Corp. v. Constructora Maza, Inc.,* 628 F.2d 724 (1980) donde la Corte de Apelaciones para el Primer Circuito confirma lo resuelto por la Corte de Distrito en *Federal Ins. Co. v. Constructora Maza, Inc.*, *supra.*

favor convirtió a éstas y al Departamento de Hacienda en acreedores concurrentes de los fondos consignados. Les asiste la razón.

Y es que de una lectura de los contratos de indemnización y de fianza otorgados entre NHIC, AIICO y Miramar Construction, en específico de la cláusula 15(2) del *General Contract of Indemnity*, claramente se desprende que **Miramar Construction acordó que**, <u>**a partir del otorgamiento de los referidos contratos**</u>, **las fiadoras se subrogarían en todo sus derechos, privilegios y propiedades**. Miramar Construction cedió a las fiadoras: (1) todos sus derechos, títulos e intereses en cualquier pago aplazado y porcentajes retenidos; (2) todo el dinero y propiedades que puedan ser adeudadas o aquellas que sean pagadas; (3) todas las reclamaciones y causas de acción relacionadas a dichos contratos o a trabajo adicional o materiales suplidos; y (4) todo dinero o propiedad proveniente de pagos, reclamaciones o causas de acción, lo cual sería acreditado a cualquier suma adeudada o que pueda adeudarse a las fiadoras bajo los términos de dicho contrato.

Sin lugar a dudas, a tenor con la normativa y la jurisprudencia discutida, y conforme a lo dispuesto en los contratos antes mencionados, el desembolso de las cantidades establecidas en las fianzas para la construcción, materiales y mano de obra de varios proyectos -- como los de Río Grande Investment, LLC y Las

Piedras Investment, LLC -- provocó la subrogación de NHIC y AIICO en todos los derechos, remedios y dinero que Miramar Construction podría poseer en virtud de dichos contratos de construcción. Contratos que se ratificaron en más de una ocasión.

Establecido que NHIC y AIICO cumplieron con sus obligaciones contractuales, éstas no sólo se colocaron en la posición de los obreros y materialistas -- en virtud de las fianzas de ejecución y pago -- sino también en el lugar de la contratista Miramar Construction, cuyas deudas satisficieron. El hecho de que NHIC y AIICO hayan presentado una acción en cobro de dinero en contra de la contratista -- y que la misma no se haya incoado en virtud de, por ejemplo, la acción directa que permite el Art. 1489 del Código Civil, 31 LPRA sec. 4130 -- no suprime sus derechos conforme a los contratos de fianza y la figura de la subrogación y cesión de créditos.

**En vista de lo anterior, desde el 7 de abril de 1995 -- fecha en que se otorgó el contrato de indemnización -- los referidos fondos ingresaron al patrimonio de las fiadoras, por lo que no estamos ante unos fondos que le correspondan a Miramar Construction y que, por ende, el Departamento de Hacienda pueda embargar.** Dichos fondos corresponden a NHIC y AIICO. Ellos son los únicos acreedores de los mismos.

Siendo ello así, no tenemos ante nos una controversia que requiera la aplicación de las

disposiciones sobre prelación de créditos. Recordemos que la mencionada disposición legal sólo aplica cuando concurren al cobro varios acreedores de un mismo deudor.[8] Resolver lo contrario no solo configuraría un enriquecimiento injusto por parte de la contratista -- por quien las fiadoras cumplieron -- sino que permitiría que se pague una deuda contributiva, entiéndase la deuda de Miramar Construction, con el dinero de un tercero que no es el deudor del Estado. Se cometió, pues, el error señalado.

IV.

---

[8] Como norma general, cuando concurren al cobro varios acreedores de un deudor común, todos cobrarán en igualdad de condiciones. Es decir, cobrarán a prorrata según la cuantía de sus respectivos créditos. J. M. Manresa, *Comentarios al Código Civil Español*, ed. 1951, Tomo XII, págs. 762-763. Véase, además, *Security Ins. Co. v. Tribunal Superior*, 101 DPR 191 (1973). No obstante, existen ciertos créditos a los cuales el Código Civil les reconoce preferencia cuando se dé la situación de concurso de acreedores. Éstos se clasificarán -- para su graduación y pago -- por el orden y en los términos que el referido Código establezca. Art. 1821 del Código Civil, 31 LPRA sec. 5191. Dicha preferencia dependerá del origen de los créditos.

Cónsono con lo anterior, el Art. 1824 del Código Civil establece que:

Con relación a los demás bienes muebles e inmuebles del deudor, gozan de preferencia:

(1) Los créditos a favor del Estado Libre Asociado de Puerto Rico, del Centro de Recaudación de Ingresos Municipales, o de la correspondiente municipalidad, por las contribuciones de las cinco (5) últimas anualidades vencidas, y la corriente no pagada, no comprendida en el inciso (1) de la sec. 5193 de este título.

(2) Los créditos por refacción agrícola, en cuanto a los frutos de las fincas objeto de refacción.

(3) ....

(4) Los créditos que sin privilegio especial consten:

(a) En escritura pública.
(b) Por sentencia firme, si hubiesen sido objeto de litigio.

Estos créditos tendrán preferencia entre sí por el orden de antigüedad de las fechas de las escrituras y de las sentencias. 31 LPRA sec. 5194.

Por los fundamentos antes expuestos, revocamos la determinación del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma cónsona con lo aquí resuelto.

Se dictará Sentencia de conformidad.


                                   Ángel Colón Pérez
                                     Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

New Hampshire Insurance Co.;
American International Insura
Co. of Puerto Rico

     Peticionarias

        v.

Ing. Luis García Passalacqua,
*et al.*

     Recurridos

CC-2017-0572     *Certiorari*

SENTENCIA

En San Juan, Puerto Rico, a 25 de enero de 2021.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte de la presente Sentencia, se revoca la determinación del Tribunal de Apelaciones y devolvemos el caso al Tribunal de Primera Instancia para la continuación de los procedimientos de forma cónsona con lo aquí resuelto.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres disiente con Opinión Escrita a la que se unen la Jueza Asociada señora Pabón Charneco y el Juez Asociado señor Rivera García. El Juez Asociado señor Kolthoff Caraballo no intervino.

José Ignacio Campos Pérez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

New Hampshire Insurance Co.;
American International Insurance
Co. of Puerto Rico

   Peticionarias


    v.       CC-2017-0572


Ing. Luis García Passalacqua, *et
al.*

   Recurridos


Opinión disidente emitida por el Juez Asociado Señor MARTÍNEZ TORRES a la cual se unieron la Jueza Asociada señora PABÓN CHARNECO y el Juez Asociado señor RIVERA GARCÍA.


En San Juan, Puerto Rico, a 25 de enero de 2021.

Disiento respetuosamente de la Opinión que suscribe este Tribunal. Resolver que las aseguradoras del epígrafe son las acreedoras del dinero consignado por virtud de un contrato y no el Departamento de Hacienda, es contrario al Art. 1824 del Código Civil, <u>infra</u>, que establece un orden preferente para pagar acreencias en caso de que concurran varios acreedores.

I

New Hampshire Insurance Company (NHIC) y American International Insurance Company (AIICO), presentaron una demanda contra Miramar Construction

Company (Miramar Construction), el Sr. Luis García Passalacqua y el Sr. José R. Berríos Pagán, quienes eran los accionistas de la empresa Miramar Construction, el 3 de abril de 2003. Alegaron que estos le adeudaban una suma que excedía $21,000,000. Explicaron que Miramar Construction confrontó problemas económicos que le impidieron completar los proyectos que tenían afianzados para finales del año 2000. De esta forma, AIICO prestó una fianza el 26 de enero de 2001 para que Miramar Construction pudiese cumplir con sus obligaciones a corto plazo, específicamente con la mano de obra y materiales en diferentes proyectos de construcción.

El 15 de marzo de 2004, las corporaciones Río Grande Investment, LLC y Las Piedras Investment, LLC -dueñas de unas obras que llevó a cabo Miramar Construction-, solicitaron intervenir en el pleito. Comparecieron para consignar la cuantía de $1,115,000, por el balance adeudado a Miramar Construction por la construcción de dos proyectos, los cuales fueron afianzados por AIICO. En su solicitud, indicaron que la consignación de los fondos tenía el propósito de que el foro primario determinara a quién le correspondía el dinero. El 27 de mayo de 2005, el foro primario notificó una sentencia parcial en la que aceptó la consignación y relevó a las dueñas de las obras de cualquier deuda con AIICO.

Por su parte, el 5 de agosto de 2005, el Estado Libre Asociado de Puerto Rico (Estado), presentó una notificación de embargo ante el Tribunal de Primera Instancia. Asimismo, solicitó el embargo de los fondos consignados por las dueñas

de las obras, por concepto de los balances que estas adeudaban a Miramar Construction. Esto tenía el propósito de cobrar una deuda contributiva de esta última correspondiente a los años 1998 a 2001, ascendente a $681,888, más los intereses. La deuda surgió por el incumplimiento de Miramar Construction con su obligación de remitir a dicha agencia la retención patronal de los salarios de sus empleados.

El 7 de marzo de 2006, NHIC y AIICO solicitaron la autorización del Tribunal de Primera Instancia para retirar la totalidad de los fondos consignados, pues entendieron que se habían subrogado por los pagos hechos a tenor con su obligación bajo las fianzas expedidas. El foro primario denegó la solicitud y sostuvo que había una controversia sobre a quién pertenecían los fondos.

En desacuerdo, NHIC y AIICO presentaron ante el Tribunal de Apelaciones una petición de certiorari. El Tribunal de Apelaciones notificó una sentencia en la que confirmó la resolución del foro primario. No obstante, la modificó a los únicos efectos de devolver el caso al TPI para que celebrara una vista evidenciaria en la que las partes pudieran presentar prueba sobre la titularidad de los fondos en controversia. Asimismo, indicó que lo más conveniente era que el Departamento de Hacienda compareciera al pleito como interventor. El foro primario solicitó los argumentos del Estado, a través de una demanda de intervención, y estableció fecha para la celebración de la vista evidenciaria.

En cumplimiento con lo anterior, el Estado presentó una demanda de intervención el 10 de marzo de 2008. Alegó que tenía un crédito preferente sobre los fondos consignados al amparo del Art. 335 del Código Político 1902, 13 LPRA sec. 502 y el Art. 1824 del Código Civil, 31 LPRA sec. 5194. Por ello, solicitó la ejecución del embargo para el cobro de la deuda contributiva de Miramar Construction. NHIC y AIICO presentaron su contestación. En lo pertinente, levantaron como defensa afirmativa que los fondos consignados, no le pertenecían a Miramar Construction, por lo que la acreencia del Estado no podía pagarse con el dinero consignado. Posteriormente, el 6 de abril de 2009, NHIC y AIICO solicitaron la disposición sumaria de la controversia sobre cobro de dinero presentada en contra de Miramar Construction. Argumentaron que no existían hechos materiales en controversia que impidieran que el foro primario estableciera que el dinero consignado les pertenecía antes del embargo. Por lo tanto, el derecho a los fondos consignados surgió del derecho de subrogación como fiadoras y los contratos otorgados por las partes. El foro primario notificó una resolución el 15 de septiembre de 2010, en la que resolvió que adjudicaría la controversia sobre a quién corresponde el dinero -NHIC, AIICO O el Estado- sujeto a que se adjudicara la controversia del cobro de dinero.

Tras varios trámites procesales, el 12 de junio de 2013 el Tribunal de Primera Instancia notificó una sentencia sumaria parcial en la que dispuso de la reclamación sobre

cobro de dinero. De esta forma, el foro primario ordenó a Miramar Construction y otros codemandados al pago de la cuantía adeudada a las peticionarias, ascendente a $21,478,449.

Miramar Construction, en desacuerdo con lo resuelto por el foro primario, presentó un recurso de apelación ante el Tribunal de Apelaciones. Eventualmente, el foro apelativo intermedio emitió una sentencia en la que confirmó al Tribunal de Primera Instancia. Inconforme, Miramar Construction recurrió ante este foro mediante una petición de certiorari. Sin embargo, este Tribunal denegó la expedición del auto de certiorari, por lo que la sentencia parcial del foro primario que ordenó a Miramar pagarle el dinero adeudado a NHIC y AIICO advino final y firme.

El 30 de abril de 2015, NHIC y AIICO presentaron una segunda solicitud para el retiro de los fondos consignados. Adujeron que el dinero les pertenecía dadas las determinaciones judiciales que pesaban a su favor. Por su parte el Estado se opuso y solicitó la adjudicación de los fondos consignados a su favor por el total de la deuda contributiva de Miramar Construction. Alegó que ninguno de los dictámenes judiciales señalados otorgaba a NHIC y AIICO la titularidad de los dineros consignados. Además, sostuvo que el dinero consignado le pertenecía a Miramar Construction. NHIC y AIICO replicaron y plantearon que el Estado no podía pretender que ellas pagaran la deuda de un tercero, Miramar Construction. Explicaron que una cláusula

pactada en el contrato de fianza le otorgó titularidad de todos los fondos que el dueño de la obra pagara a Miramar Construction para hacer pagos que las aseguradoras desembolsaron primeramente. Por su parte, Miramar Construction presentó su oposición a la solicitud de retiro de fondos presentada por NHIC y AIICO. Planteó que NHIC, AHIICO y el Estado eran sus acreedores. Conforme a ello, señaló que el crédito del Estado gozaba de prelación al de las fiadoras sobre las cuantías consignadas que pertenecían a Miramar Construction, según el Artículo 1824 del Código Civil, supra.

El 7 de diciembre de 2016, el foro primario notificó una resolución en la que reconoció que el Estado tenía un crédito preferente sobre los fondos consignados. De esta forma, ordenó al Estado presentar en un término de veinte días una tasación actualizada de la deuda contributiva. En cumplimiento con lo anterior, el Estado certificó que la deuda contributiva de Miramar Construction ascendía a $792,148.24. El 21 de noviembre de 2016, el Tribunal de Primera Instancia notificó una sentencia parcial en la que proveyó ha lugar a la demanda de intervención del Estado y dispuso que este tenía un derecho preferente sobre el dinero consignado. Consecuentemente, la deuda contributiva de Miramar Construction sería satisfecha con los fondos consignados.

NHIC y AIICO acudieron al Tribunal de Apelaciones, inconformes con lo resuelto por el foro primario. Plantearon

que el Tribunal de Primera Instancia erró al concluir que el Estado tiene derecho preferente sobre parte de los fondos consignados para cubrir una deuda contributiva de Miramar Construction, ya que esos fondos nunca le han pertenecido a Miramar Construction, sino a NHIC y AIICO, en virtud de una legítima e incontrovertida cesión de fondos. El Estado alegó en oposición que su crédito tenía prelación conforme con lo establecido en el Art. 1824 del Código Civil, supra. Además, arguyó que los fondos consignados no le pertenecen a NHIC ni AIICO, ya que el dinero fue generado por el trabajo de Miramar Construction en los proyectos. Por su parte, Miramar Construction también presentó su alegato en oposición y planteó los mismos argumentos que el Estado.

El foro apelativo intermedio emitió una sentencia en la que confirmó al foro primario. Concluyó que el dinero consignado pertenecía a Miramar Construction, por lo que procedía la aplicación del Art. 1824 del Código Civil, supra, ante la concurrencia del Estado, NHIC y AIICO como acreedores.

Inconforme con los resuelto, NHIC y AIICO presentaron ante nos una petición de certiorari en la que plantearon que el foro apelativo intermedio erró al no considerar el efecto de la subrogación en virtud de los contratos que existían entre Miramar Construction, NHIC y AIICO. Asimismo, sostienen que el foro apelativo intermedio erró al concluir que NHIC, AIICO y el Estado son acreedores concurrentes.

II

El Art. 1134 del Código Civil[9], 31 LPRA sec. 3184, establece que la consignación es una de las formas de extinguir las obligaciones. Esta "supone una forma de pago que le permite al deudor solicitar a un tribunal que ordene la cancelación de la obligación". Administración del Sistema de Retiro v. Ex parte Proc. Rel. Fam., 196 DPR 944, 950 (2016). Según surge del Art. 1134 del Código Civil, supra, la consignación libera al deudor de su obligación cuando varias personas dicen que tienen derecho a cobrar y el acreedor acepta la cuantía consignada o un tribunal indica que la consignación se hizo conforme a derecho. Para ello, es indispensable que la consignación se haga a la persona a cuyo favor estuviese constituida la obligación. Art. 1116 del Código Civil, 31 LPRA sec. 3166.

En este caso, Río Grande Investment, LLC. y Las Piedras Investment, LLC. consignaron el dinero que le adeudaban a Miramar Construction, para que el tribunal determinara a quién le correspondía ese dinero. Sin embargo, durante el proceso, el Estado solicitó el embargo de los fondos, para cobrar una deuda contributiva de Miramar Construction. De esta forma, el Tribunal de Primera Instancia resolvió que existe una deuda de Miramar Construction con NHIC y AIICO, y que tenía ante sí dos acreedores concurrentes, por lo que

---

[9] Toda referencia al Código Civil es al derogado Código Civil de 1930, según enmendado, vigente cuando se otorgó el contrato objeto de este caso. Art. 1812 del Código Civil de 2020, Ley Núm.55-2020, 31 LPRA sec. ___.

tiene que escoger a quien le corresponde la cantidad consignada.

III

En caso de que concurran varios acreedores para cobrar contra un mismo deudor, el Código Civil establece un orden de preferencia. Este depende del origen de la acreencia. En específico, el Art. 1824 del Código Civil, 31 LPRA sec. 5194, indica que

> [c]on relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia:
> (1) Los créditos a favor del Estado Libre Asociado de Puerto Rico, del Centro de Recaudación de Ingresos Municipales, o de la correspondiente municipalidad, sobre los bienes de los contribuyentes por el importe de las cinco (5) últimas anualidades y la corriente no pagada, de las contribuciones que graviten sobre ellos.
> …
> (4) Los créditos que sin privilegio especial consten:
> (a) En escritura pública.
> (b) Por sentencia firme, si hubiesen sido objeto de litigio.
>
> Estos créditos tendrán preferencia entre sí por el orden de antigüedad de las fechas de las escrituras y de las sentencias.

En este caso concurren como deudor el Estado (Departamento de Hacienda), NHIC y AIICO. El Código Civil es claro en que en caso de concurrencias de acreedores sobre una acreencia, el Estado (Departamento de Hacienda) tiene preferencia para cobrar del dinero consignado.

IV

La Opinión mayoritaria concluye que el dinero consignado pertenece a NHIC y AIICO. Para llegar a esta conclusión utiliza como fundamento lo que resolvimos en Amer. Surety Co. v. Tribunal Superior, 97 DPR 452 (1969). Sin embargo, ese caso es distinguible de la controversia que tenemos ante nuestra consideración.

En aquella ocasión, la American Surety Company, quien era cesionaria de unas deudas por concepto de trabajos realizados por un subcontratista de la obra, demandó a la Asociación de Maestros, dueñas de la obra, y a las empresas contratistas. Mediante un laudo de arbitraje se estableció que la Asociación de Maestros adeudaba una cantidad de dinero y que los subcontratistas, a su vez, tenían que pagarle a la American Surety Company. Ante esto, la Asociación de Maestros consignó el dinero adeudado, sin perjuicio del derecho que sobre este dinero podía tener el gobierno por unas deudas que la Asociación de Maestros tenía con este. Tras la consignación, la American Surety Company solicitó que se le entregara de la suma consignada lo que se le debía. El gobierno objetó esta moción por entender que tenía un crédito preferente de acuerdo con el Art. 1824 del Código Civil, supra. Luego de evaluar las mociones, el foro primario concluyó que el gobierno tenía un crédito preferente, por lo que le correspondía la suma consignada.

Inconforme por lo resuelto por el foro primario, la American Surety Company acudió ante nosotros. En aquella

ocasión, indicamos que el Art. 1489 del Código Civil, 31 LPRA sec. 4130, crea una acción directa de los obreros o materialistas contra los dueños de la obra por el dinero que los contratistas les adeuden. Amer. Surety Co. v. Tribunal Superior, supra, pág. 455. En específico, el Art. 1489 del Código Civil, supra, indica que

> [l]os que ponen su trabajo y materiales en una obra ajustada alzadamente por el contratista no tienen acción contra el dueño de ella sino hasta la cantidad que éste adeude a aquél cuando se hace la reclamación.

En aquella ocasión dijimos que una vez un obrero o materialista hace una reclamación contra el dueño de la obra por dinero adeudado por el contratista, este se convierte en deudor de los obreros y materialistas. Íd., págs. 455-456. Véase también P.R. Wire Prod. v. C. Crespo & Assoc., 175 DPR 139, 148 (2008). Explicamos que esto es una excepción al principio de que los contratos solo tienen efecto entre las partes que lo otorgan, pues los materialistas y obreros, aunque no hayan contratado con el dueño de la obra, tienen una acción directa contra este. Amer. Surety Co. v. Tribunal Superior, supra, págs. 455-456. En otras palabras, el contratista deja de ser deudor de los obreros y materialistas, y los acreedores del dueño de la obra no pueden concurrir con los demandantes cuando el dueño tiene otras acreencias. Íd., pág. 456. En esa ocasión concluimos que por tratarse de una acción en la que la American Surety Company era cesionaria de un subcontratista que demandó al dueño de la obra, estábamos ante una acción bajo el Art. 1489

del Código Civil, supra. De esta forma, concluimos que no se trató de un caso de preferencia de créditos, sino de una acción directa contra el dueño de una obra que no estaba sujeta a otras deudas que tuviera el contratista. Íd., pág. 457

En cambio, la controversia que tenemos hoy ante nuestra consideración no puede tratarse como una reclamación al amparo del Art. 1489 del Código Civil, supra, como hace la Opinión mayoritaria. NHIC y AIICO son fiadoras de Miramar Construction, que es la contratista, y entablaron una acción de cobro de dinero contra esta, por un dinero que le debían a ellas como sus fiadoras. No estamos ante una acción de la fiadora contra las dueñas de las obras, a diferencia de American Surety v. Tribunal Superior, supra. El foro primario resolvió que Miramar Construction debía una cantidad de dinero a NHIC y AIICO. Con motivo de ejecutar la sentencia, estas últimas solicitaron cobrar del dinero que las dueñas de la obra consignaron para cubrir la deuda que tenían con Miramar Construction. De esta forma, es claro que no hay una acción directa de los obreros o materialistas, ni de sus fiadoras, contra el dueño de la obra, requisito necesario para que exista una acción bajo el Art. 1489 del Código Civil, supra. Véanse, American Surety v. Tribunal Superior, supra; P.R. Wire Prod. v. C. Crespo & Assoc., supra; Insular Highway v. A.I.I. Co., 174 DPR 793 (2008); Junco Steel Corp. v. C.E. Design Dev., 148 DPR 272 (1999); Goss, Inc. v. Dycrex Const. & Co., S.E., 141 DPR 342 (1996); D'All Concrete Mix

Inc., v. R. Fortuño, Inc., 114 DPR 740 (1983); R. Roman & Cía v. J. Negrón Crespo, Inc., 109 DPR 26 (1979); Montalvo & Comas Electric Corp. v. E.L.A., 107 DPR 558 (1978).

En este caso lo que hay es dos acreedores del dueño que concurren. Aplica entonces lo dispuesto en el Art. 1824 del Código Civil, supra. Así, como la acreencia del Estado (Departamento de Hacienda) tiene preferencia sobre la de NHIC y AIICO, este tiene derecho a cobrarla del dinero consignado, tal como resolvieron los foros inferiores.

V

La Opinión mayoritaria también fundamenta su conclusión en el contrato entre la contratista Miramar Construction y sus fiadoras. En resumen, el General Contract of Indemnity estableció que las peticionarias tendrían una causa de acción en contra de Miramar Construction, si incurrían en una pérdida o si se desembolsaba dinero en virtud de las fianzas emitidas o de cualquier otro contrato que se otorgara en relación con las fianzas, como lo fue el Surety Contractor Agreement. Específicamente, surge del General Contract of Indemnity que:

> FIFTEENTH: […] (2) The indemnitor(s) do hereby jointly and severally agree as of this date, that the said Surety shall be subrogated to all of their rights, privileges and properties as Principal in any or all such contracts; and the Principal and/or indemnitor(s) do hereby assign, transfer and convey to said Surety, as of this date, all of their right, title and interest in and all of the deferred payments and retained percentages arising out of any such contract, progress payments, and any and all moneys and properties that may be, and that thereafter may become due and payable on account of, and all claims and actions and causes

of actions related to, any such contract or on account of or relating to extra work or materials supplied in connections therewith, and any and all other moneys or properties, hereby agreeing that such moneys and the proceeds of such payments, properties, claims, actions and causes of action shall be the sole property of the Surety, to be by it credited upon any sum due or to become due to the Surety under the terms of this agreement. General Contract of Indemnity, Apéndice, pág. 32.

Por otro lado, en el *Surety Contractor Agreement,* que fue pactado el 26 de enero de 2001, las partes reconocieron e incorporaron lo establecido en el General Contract of Indemnity, suscrito el 7 de abril de 1995. Por ello, puntualizaron lo siguiente: "[n]othing cointained herein shall waive, limit, alter or amend any of Surety's rights, defenses or liability under law or under terms of such performance bond and/or payment bond or under *General Contract of Indemnity*". Véase, Surety-Contractor Agreement, Apéndice, pág. 40. Asimismo, establecieron lo siguiente:

> **That subrogation,** assignment and transfer relates and covers all the contract bonded by the Surety or its affiliates pertaining to the Surety […].
> …
> As a result of said "General Contract of Indemnity", the **Surety is actually the owner of all rights of the bonded contractor in those contracts and in all other contracts bonded by the Surety** or by any other of the companies that form part of group known as "American International Companies." **Therefore, the bonded contractor acknowledges that the Surety is entitled to have the owner in each and everyone of those projects pay the contract price directly to the Surety** or, at the option of the Surety, in a check to the order of the bonded contractor and the Surety, jointly. **Ratification of Assignment to American International Insurance Company of Puerto Rico, Apéndice, págs. 47-48**

Conforme con los contratos antes mencionados, la Opinión mayoritaria concluye que el desembolso de las cantidades

establecidas en las fianzas pactadas por las peticionarias y Miramar Construction para la construcción de varios proyectos para Río Grande Investment, LLC y Las Piedras Investment, LLC, provocó la subrogación de las peticionarias en todos los derechos y remedios de Miramar Construction. Sin embargo, esta conclusión es errónea. En realidad, este contrato lo que hace es permitir la subrogación; en otras palabras, le da legitimación a la fiadora para que establezca una acción directa contra el dueño de la obra bajo el Art. 1489 del Código Civil, supra.

Para que la subrogación opere y una fiadora pueda tener legitimación para cobrar de forma directa el dinero que le adeuda el dueño de una obra que ha afianzado, la fiadora tiene que ejercer su derecho a subrogarse y demandar directamente al l dueño, tal y como surge del Art. 1489 del Código Civil, íd. Si las fiadoras NHIIC y AIICO decidieron demandar directamente a la contratista Miramar Construction, en lugar de subrogarse y demandar directamente a los dueños de la obra, entonces no cabe hablar de una acción bajo el Art. 1489 del Código Civil, íd., sino de una acción ordinaria de cobro de dinero de las fiadoras a su deudora, Miramar Construction. De esta forma, no puede decirse que el dinero consignado pasó directamente al patrimonio de las fiadoras. El dinero consignado es parte del patrimonio de Miramar Construction y las fiadoras tienen derecho a satisfacer su acreencia con todos los bienes presentes y futuros de su deudora, Miramar Construction, pero no con un bien en

particular, tal y como surge del Art. 1811 del Código Civil, 31 LPRA sec. 5171.

De esta forma, como Miramar Construction tenía una deuda tributaria con el Estado, este último tiene preferencia para cobrar, en virtud del Art. 1824 del Código Civil, supra. Interpretar el contrato como lo hace la mayoría avala que unas partes privadas pacten entre sí para dejar sin cobrar a los acreedores preferentes, como el Estado, contrario a lo que establece la ley.

VI

Según lo expuesto, el Departamento de Hacienda tiene un crédito preferente sobre NHIC y AIICO. Por eso, disiento respetuosamente del curso que hoy decide seguir este Tribunal y, en cambio, confirmaría la sentencia del Tribunal de Apelaciones.

RAFAEL L. MARTÍNEZ TORRES
Juez Asociado